Joseph W. and Sydney N. Brown, Petitioners, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 94845. Filed August 16, 1963.

*T. C. Fitzgerald*, for the petitioners.
*Winfield A. Gartner*, for the respondent.

Arundell, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1957 in the amount of $9,142.84.

Petitioners assign three errors, namely, (1) the reclassification from long-term capital gain to ordinary income of the gain realized on the sale of certain contracts; (2) the disallowance of $1,326.08 depreciation claimed on a 1956 automobile owned by petitioner Joseph W. Brown for 8 months in 1957 and used by him for business purposes; and (3) the disallowance of $343.94 expended by petitioner Joseph W. Brown to have the timber cruised on a tract of land which petitioner contemplated purchasing but which contemplated transaction was subsequently abandoned by him upon its proving unprofitable.

### FINDINGS OF FACT

The stipulated facts are so found and are incorporated herein by this reference.

Joseph W. Brown (hereinafter sometimes referred to as petitioner) and Sydney N. Brown are husband and wife residing in Ridgeland, S.C. They filed their joint Federal income tax return for the taxable year 1957 with the district director of internal revenue, Atlanta, Ga.

Petitioner was one of the original promoters and organizers of United American Life Insurance Co. which was organized along with a related investment company, United American Investment Co., in Atlanta, Ga., during the year 1955.

United American Life Insurance Co. and United American Investment Co. were during the year in issue under common control, both as to management and stockownership.

Petitioner was associated with United American Life Insurance Co. from its organization in 1955 until May 7, 1957, in various capacities.

On March 30, 1956, petitioner executed a contract with United American Life Insurance Co. This contract was subsequently amended by contract dated August 17, 1956.

Under the terms of the contract dated March 30, 1956, and the amended contract dated August 17, 1956, petitioner was appointed assistant director of agencies for the United American Life Insurance Co.

On January 11, 1957, petitioner executed another contract with United American Life Insurance Co. and, under the terms of this contract, petitioner was appointed director of agencies of United American Life Insurance Co. As assistant director of agencies and as director of agencies of the United American Life Insurance Co. and under the various contracts with that company dated March 30, 1956, August 17, 1956, and January 11, 1957, petitioner received as full remuneration for his services the tabulated first-year and renewal commissions shown on schedules attached to these contracts.

As full remuneration for expenses incurred in connection with company business petitioner was granted an expense allowance of $50 per week under the two contracts dated March 30, 1956, and August 17, 1956. When petitioner became director of agencies under the contract dated January 11, 1957, this expense allowance was increased to $100 per week.

United American Life Insurance Co. supplied the petitioner with contract blank forms, adequate office space, office supplies, sales materials, stenographic expenses, and any other office requirements reasonably necessary.

Petitioner's several contracts with United American Life Insurance Co. were all cancelable upon 30 days' notice by either party.

Paragraph 9 of the contracts dated March 30, 1956, and August 17, 1956, was identical and provided as follows:

Nothing herein contained shall be construed to create the relation of employer and employee between the Company and the Assistant Director of Agencies. Within the territory above described, the Assistant Director of Agencies shall be free to exercise his own judgment as to the conduct of his business, provided that the Company and the Director of Agencies may from time to time prescribe rules and regulations respecting the conduct of the business covered hereby, and the Assistant Director of Agencies agrees to be governed thereby.

Paragraph 9 of the contract dated January 11, 1957, was substantially the same as paragraph 9 of the two above-mentioned contracts except that "Director of Agencies" was substituted for "Assistant Director of Agencies."

As director of agencies petitioner was responsible for the recruitment of subagents. These subagents were paid by the United American Life Insurance Co.

Petitioner's compensation from the United American Life Insurance Co. has been described as an overriding commission. The overriding commissions, reported by petitioner as income on his joint Federal income tax return, were measured by the gross amount of first-year and renewal commissions credited to his account by the United American Life Insurance Co. under the terms of his contracts, less a stipulated amount of first-year and renewal commissions, paid out by United American Life Insurance Co. to the petitioner's subagents, based upon a percentage agreed upon between the petitioner and his subagents. The difference between the amounts paid out to the subagents and the gross first-year and renewal commissions due the petitioner under his contract thus represent the petitioner's net reportable commission income.

On May 7, 1957, petitioner, by contract, assigned all of his rights under the contracts dated March 30, 1956, August 17, 1956, and January 11, 1957, with United American Life Insurance Co. to the United American Investment Co. for a stated consideration in the amount of $45,564.15. Due to a typographical error, the stated consideration was in error by the amount of $2,000 in that the actual consideration agreed upon was $43,564.15. The May 7, 1957, contract provided in part as follows:

This contract of sale made and entered into between JOSEPH W. BROWN * * * and the UNITED AMERICAN INVESTMENT COMPANY, * * * the said Joseph W. Brown hereinafter referred to as the Seller, and the United American Investment Company hereinafter referred to as the Company,

WITNESSETH, That:

WHEREAS, the said Seller has a contract with the United American Life Insurance Company * * * dated March 30, 1956, and subsequently amended for commissions to be paid as Assistant Agency Director of United American Life Insurance Company and a certain contract dated January 12, [sic, should be January 11] 1957, for commissions to be paid as Director of Agencies for United American Life Insurance Company, and

WHEREAS, the Seller desires to make a sale of these contracts and the Company desires to buy the same ;

NOW THEREFORE IT IS AGREED : That the said Joseph W. Brown does hereby transfer all of his rights under said contracts including, but not limited to, any monies due him under said contracts with United American Life Insurance Company and does hereby specifically assign said contracts and all rights

thereunder to the United American Investment Company and does hereby waive any right that he may have under said contracts.

    *        *        *        *        *        *        *

It is further agreed that there has been paid to the Seller, receipt of which is hereby acknowledged, the sum of $45,564.15 [sic, should be $43,564.15] * * *.

    *        *        *        *        *        *        *

It is understood that this is a complete, absolute and out-right purchase of the contracts mentioned above by the United American Investment Company and a full, complete and absolute final payment of all monies due to the Seller thereunder.

It is further agreed that the said Seller, Joseph W. Brown, by signing this agreement hereby resigns from the Board of Directors of United American Life Insurance Company and United American Investment Company, as a member of the Executive and Finance Committees of the United American Life Insurance Company and United American Investment Company, and as Vice President of both the abovementioned companies, and attached hereto his resignations addressed to the Presidents of the respective companies.

Petitioner derived income in the total amount of $68,465.06 from the United American Life Insurance Co. during the taxable years 1956 and 1957. Of the $68,465.06 received from the United American Life Insurance Co., $17,836.56 was received and reported on petitioner's Federal income tax return as ordinary income in the taxable year 1956 and $7,064.35 was received and reported on petitioner's Federal income tax return as ordinary income in the taxable year 1957.

The balance of the $68,465.06 received by petitioner from United American Life Insurance Co. during the taxable years 1956 and 1957, or $43,564.15, represents the actual net consideration received by petitioner under the contract dated May 7, 1957, with United American Investment Co. This $43,564.15 represents the actuarially computed value of the commissions due the petitioner under his various contracts with United American Life Insurance Co.

Due to the nature of actuarial computations, several computations of the present value of the petitioner's rights to future income under his several contracts with United American Life Insurance Co. were made. The figures thus arrived at became a basis for negotiating the final consideration agreed upon.

Although the purchase of the petitioner's contracts with United American Life Insurance Co. by the United American Investment Co. encompassed necessarily the purchase of all the petitioner's rights under those contracts, the real value of those contracts was in petitioner's right to future income. The contract price agreed upon was actually based upon the value of the commissions due the petitioner under the contracts.

The actual contract price of $43,564.15 was received by petitioner by eliminating a debt of $19,439.28 due by petitioner to United Amer-

ican Investment Co. and by paying the balance to petitioner by check in the amount of $24,124.87.

On the joint return for 1957 petitioner reported a long-term capital gain of $41,064.15 from the assignment of all of his rights under the three contracts dated March 30, 1956, August 17, 1956, and January 11, 1957. The respondent determined that the $43,564.15 received by petitioner was taxable as ordinary income rather than as long-term capital gain. He therefore increased petitioners' income by $43,564.15 and decreased it by one-half of $41,064.15, or $20,532.07, with the following explanation:

(a) On your return you reported long-term capital gain of $20,532.07 (one-half of $41,064.15 total gain) from the "United Am Contract." It is determined that you received $43,564.15 rather than $41,064.15 from this source, and that the $43,564.15 constitutes ordinary income in accordance with the provisions of section 61, Internal Revenue Code of 1954. Accordingly, taxable income is increased $43,564.15. (See (c) below for adjustment as to the capital gain reported.)

Petitioner purchased a Cadillac automobile on June 1, 1956, at a cost of $6,521.77. Petitioner used this car exclusively in his business and claimed a 2-year useful life for purposes of depreciation. No salvage value was used. Petitioner sold this car on August 1, 1957, for $3,500.

On his return for 1957 petitioner deducted as depreciation on the car the amount of $2,445.67. He also reported as a long-term capital gain the amount of $1,054.33 computed as follows:

| | |
|---|---|
| Cost | $6,521.77 |
| Less depreciation | 4,076.10 |
| Remaining basis | 2,445.67 |
| Selling price | 3,500.00 |
| Gain | 1,054.33 |

The respondent determined that petitioner had no gain from the sale of the car and that $1,326.08 of the depreciation deducted for 1957 should be disallowed. He determined the latter amount as follows:

| | |
|---|---|
| Cost of automobile | $6,521.77 |
| Less salvage value | 3,500.00 |
| Balance available for depreciation | 3,021.77 |
| Depreciation claimed in prior year | 1,902.18 |
| Depreciation allowable for 1957 | 1,119.59 |
| Depreciation deducted on return | 2,445.67 |
| Depreciation disallowed | 1,326.08 |

In a statement attached to the deficiency notice the respondent explained the depreciation adjustment as follows:

(b) On your return depreciation of $2,445.67 was deducted on a 1956 Cadillac automobile. It is determined that the allowable depreciation deduction on the 1956 Cadillac automobile is $1,119.59 as computed in Exhibit A. Accordingly, taxable income is increased by $1,326.08. (See (c) below for adjustment as to the capital gain reported on the sale of the automobile.)

Petitioner spent $343.94 in the year 1957 for the purpose of obtaining a timber cruise of a piece of land. This expenditure was not claimed as a deduction on petitioner's return filed for the taxable year 1957 but was claimed in the petition herein filed. The cost of the cruise was incurred by petitioner in anticipation of purchasing a tract of land and going into a new business venture. The tract of land cruised was never in fact purchased, and petitioner never entered into the contemplated new business venture.

### ULTIMATE FINDINGS OF FACT

The consideration of $43,564.15 received by petitioner in the taxable year 1957 as consideration for the assignment of his contract rights with United American Life Insurance Co. to the United American Investment Co. constitutes ordinary income.

The salvage value of petitioner's 1956 Cadillac automobile was $3,500 and the allowable depreciation on this automobile in petitioner's taxable year 1957 is in the amount of $1,119.59.

The cost incurred by petitioner for the timber cruise did not constitute a loss incurred in a transaction entered into for profit.

### OPINION

The principal question is whether the amount of $43, 564.15 received by petitioner in 1957 is taxable as ordinary income under section 61 of the 1954 Code or as a long-term capital gain under sections 1221 and 1222(3) of the 1954 Code. The material provisions of these sections are in the margin.[1]

---

[1] SEC. 61. GROSS INCOME DEFINED.
    (a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *.
SEC. 1221. CAPITAL ASSET DEFINED.
    For purposes of this subtitle, the term "capital asset" means property held by the taxpayer * * *.
SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES.
    For purposes of this subtitle—

    *        *        *        *        *        *        *

    (3) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months * * *

It should be noted at the outset that the Supreme Court has long held that the term "capital asset" is to be construed narrowly.[2]

Petitioner, in his brief, contends that he is entitled to capital gains treatment—

since he sold under the exclusive agency contract a bundle of rights sufficient to add up to a transfer of property, in that he not only transferred through the sale his right to future income, but in addition gave up all his other benefits under the contract, including his right to hire and fire agents, his right to audit, his right to incur reasonable agency expenses, to office space, stenographic help and all agency records and periodic advice as to policyholder status.

In support of this contention petitioner relies principally upon *Jones* v. *Corbyn*, 186 F. 2d 450 (C.A. 10, 1950), and *Nelson Weaver Realty Co.* v. *Commissioner*, 307 F. 2d 897 (C.A. 5, 1962), reversing and remanding 35 T.C. 937.

The respondent contends that the $43,564.15 consideration received from the United American Investment Co. for the transfer to that company of all of petitioner's rights, primarily the right to future income, under the contracts dated March 30, 1956, August 17, 1956, and January 11, 1957, with United American Life Insurance Co., constitutes ordinary income under section 61, *supra*, and not long-term capital gain from the sale or exchange of a capital asset under section 1222(3), *supra*. In support of this contention the respondent relies principally upon *United States* v. *Eidson*, 310 F. 2d 111 (C.A. 5, 1962).

The Tenth Circuit, which decided *Jones* v. *Corbyn*, *supra*, in 1950, has greatly limited the effectiveness of that decision in their more recent case of *Wiseman* v. *Halliburton Oil Well Cementing Co.*, 301 F. 2d 654 (C.A. 10, 1962), wherein it said:

The case is not controlled by our decisions in Dairy Queen of Oklahoma, Inc. v. Commissioner of Internal Revenue 10 Cir., 250 F. 2d 503, or Jones v. Corbyn, 10 Cir., 186 F. 2d 450. Dairy Queen is clearly distinguishable upon both law and fact. Jones v. Corbyn, where an insurance agency was sold intact as a going business and the income therefrom was not considered as having been derived from the termination of a contract giving rise to the right to receive future income, *is premised in part upon broad reasoning which seemingly conflicts with the views expressed in the case at bar. To the extent such conflict may exist, we now rely upon the views herein expressed.* [Emphasis supplied.]

Also in *Bisbee-Baldwin Corporation* v. *Tomlinson*, 320 F. 2d 929 (C.A. 5, 1963), the Fifth Circuit, in referring to the holding in *Halliburton*, said "In so holding the Tenth Circuit expressly disapproved and in effect overruled *Jones* v. *Corbyn*."

The Fifth Circuit, which decided *Nelson Weaver Realty Co.* v. *Commissioner*, *supra*, has likewise greatly limited the effectiveness of that case in two of their more recent decisions. See *United States* v. *Eidson*, *supra;* and *Bisbee-Baldwin Corporation* v. *Tomlinson*, *supra*. In the

---

[2] See *Burnet* v. *Harmel*, 287 U.S. 103; *Hort* v. *Commissioner*, 313 U.S. 28; *Corn Products Refining Co.* v. *Commissioner*, 350 U.S. 46; *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260; and *Commissioner* v. *Gillette Motor Transport, Inc.*, 364 U.S. 130.

*Eidson* case the Fifth Circuit, after reviewing its decision in the *Weaver* case, said:

Except to the extent that the Weaver Mortgage Company case can be sustained on the basis that there was there a sale of a property right equivalent to a sale of a business and good will, which really seems to be the ratio decidendi, that case would appear to be in conflict with the earlier Supreme Court decisions defining capital assets. We, therefore, distinguish it on the stated ground that there was a sale of a business including good will, a circumstance not present here.

In the *Bisbee-Baldwin* case, Circuit Judge Wisdom, in referring to the *Weaver* and *Eidson* cases, made this comment:

A majority of this Court conclude that they cannot bridge the gulf between Weaver and Eidson. Since we must choose between the two, we choose to follow Eidson on principle and the solution to the problem suggested by the dissent in Weaver.

In the instant case we think the facts are substantially like the facts in *Eidson*. The substance of what petitioner assigned to the United American Investment Co. for a stated consideration of $43,564.15 was his right to receive future income from the three contracts dated March 30, 1956, August 17, 1956, and January 11, 1957. The evidence clearly shows that the consideration finally agreed upon of $43,564.15 was what the actuary, after making several computations, concluded petitioner's right to receive future income under those contracts was worth on May 7, 1957. While the consideration of $43,564.15 was intended to compensate petitioner for all the property transferred, it is obvious that the real value was in the right to receive future commissions. The contracts were all cancelable by either party upon 30 days' notice. There is nothing in the record to indicate that there was any bargaining for goodwill. Therefore, under the circumstances of this case, we hold there would exist no basis for a possible allocation such as was directed in *Commissioner* v. *Ferrer*, 304 F. 2d 125 (C.A. 2, 1962), reversing and remanding in part 35 T.C. 617, and *Bisbee-Baldwin Corporation* v. *Tomlinson, supra,* of the $43,564.15 as between consideration received for the sale of a capital asset and consideration received for the present (May 7, 1957) cash value of future income. We hold the latter all taxable as ordinary income. *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260; *United States* v. *Eidson, supra; Bisbee-Baldwin Corporation* v. *Tomlinson, supra.*

Regarding respondent's disallowance of $1,326.08 depreciation claimed on his automobile, the parties agree that the automobile cost $6,521.77 on June 1, 1956; that petitioner used the automobile exclusively in his business; that it had a 2-year useful life; and that petitioner sold the automobile on August 1, 1957, for $3,500. Petitioner, in computing depreciation, did not use any salvage value. The respondent determined that the salvage value was $3,500 and recom-

puted depreciation on that basis as set out in our findings. In his brief, petitioner admits that he was in error in not assigning a salvage value to the automobile but objects "to the fact that the Commissioner has arbitrarily used the market value or sales price of the car after fifteen months as the salvage value which should have been assigned to the automobile from the outset." Petitioner, however, offered no evidence to show that the salvage value was any different from that determined by the respondent. The burden was on petitioner to show error on the part of the respondent and, having failed to do so, we must sustain the respondent's determination as to this issue.

As to the third issue, petitioner contends he is entitled to deduct the $343.94 paid for cruising a piece of timberland under section 165 (c) (2) of the 1954 Code.[3]

At the hearing, petitioner testified that in 1957 he contacted the owner of a tract of timberland of about 1,050 acres on which there was also a house and other buildings; that the owner made petitioner an offer to sell him the property at a stated price; that petitioner was given time to secure a timber cruise of the land; that petitioner had the cruise made at a cost to him of $343.94; that before and after the cruise he contacted a third party about taking over the management of the timber or actually buying it from petitioner in case petitioner should purchase the 1,050 acres; but—

We couldn't get together on a price that they wanted to pay for the timber and the land, and I had the buildings and the remainder of the land, about a 100 acres around the house appraised, and the appraisal didn't come up to a satisfactory figure to be feasible for me to buy any part of it, so I abandoned the project.

We do not think the cost of cruising the timberland petitioner was contemplating buying is deductible as a loss under section 165 (c) (2), *supra*. It was not incurred in a transaction "entered into" for profit. *Robert Lyons Hague*, 24 B.T.A. 288; *Morton Frank*, 20 T.C. 511, 514. Petitioner did not enter into the contemplated transaction. As we said in the *Hague* case, where the taxpayer there was contending that certain legal fees paid for investigating a contemplated business proposition that never matured were deductible as losses incurred in a transaction entered into for profit:

The simple answer to this contention is that petitioner did not enter into these transactions but, on the contrary, stayed out of them.

---

[3] SEC. 165. LOSSES.
 (a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
 
  \*        \*        \*        \*        \*        \*        \*

 (c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—
 
  \*        \*        \*        \*        \*        \*        \*

  (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; \* \* \*

The facts in the instant case are distinguishable from those in *Charles T. Parker*, 1 T.C. 709, relied upon by petitioner, in that Parker actually entered into the contemplated transaction before the abandonment took place.

We hold for the respondent on this issue.

*Decision will be entered for the respondent.*