776

## L. M. LOCKHART, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 89447.    Filed March 15, 1965.

*Carl F. Bauersfeld*, for the petitioner.
*Harold Friedman*, for the respondent.

TRAIN, *Judge:* The respondent determined deficiencies in petitioner's income tax for the years 1952 and 1954 in the amounts of $206,024.50 and $303,970.93, respectively.

The issues for decision are:

(1) Whether petitioner's deductions arising from the operation of a ranch in excess of petitioner's gross income from the ranch plus $50,000 per year plus specially treated deductions were properly disallowed under section 270 of the Internal Revenue Code of 1954; and

(2) Whether depreciation claimed by the petitioner on two air-planes is allowable.

### FINDINGS OF FACT

Some of the facts have been stipulated and are hereby found as stipulated.

The petitioner, L. M. Lockhart, is an unmarried individual who presently resides in San Antonio, Tex. He formerly resided in Los Angeles, Calif. Petitioner filed his returns for 1952, 1953, and 1954 with the district director at Los Angeles, and his returns for 1955 and 1956 with the district director at Austin, Tex.

At all times material hereto petitioner kept his books and records and filed his income tax returns on the accrual method of accounting.

During the years 1952 to 1956, inclusive, petitioner owned and operated a ranch and commercial feed business located in San Bernadino County, Calif. This property, known as the Lockhart Ranch, consisted of over 2,800 acres near Barstow, Calif. Petitioner also owned an interest in a ranch in New Mexico and certain acreage in Nueces County, Tex.

Petitioner was also actively engaged in the oil business. In addition to individually engaging in the business of oil production and in investment in oil and gas interests, petitioner received a salary in each of the years involved from Lockhart Oil Co. of Texas.

Petitioner acquired the first part of his California ranch in 1927 or 1928. When he started the ranch, he raised alfalfa, had dairy cattle, and shipped the milk by tank truck to Los Angeles. After

he acquired more acreage, he put in a commercial feed mill with feedlots for feeding 8,000 head of cattle. He installed a dehydration plant and a heavy compress to bale alfalfa in small bales for export in ships. He also grew wheat and installed a chemical department in connection with the manufacture of chlorophyl.

During the years 1952 to 1956, inclusive, petitioner devoted as much as two-thirds of his time to the ranching and commercial feed operation in California. The Lockhart Ranch employed as many as 95 men and, on the average, about 70 men per year. The ranch also employed a ranch manager. Among the capital investments of the ranch were farming equipment, the alfalfa dehydrator, the commercial feed mill, grain-storage facilities, workshops, bachelor quarters, and messhouse. During the years involved, the cattle were marketed principally in the Los Angeles area, and the commercial feed in the form of alfalfa was also sold in the Los Angeles dairy area.

On his income tax returns for the years 1952 through 1956, petitioner claimed losses resulting from operation of the Lockhart Ranch as follows:

| | |
|---|---|
| 1952 | $761,288.90 |
| 1953 | 518,113.66 |
| 1954 | 478,572.13 |
| 1955 | 289,163.30 |
| 1956 | 310,805.36 |

For each of the years 1952 through 1956, the deductions claimed by petitioner from the operation of the Lockhart Ranch exceeded by more than $50,000 the specially treated deductions (sec. 270(b)) plus the gross income derived therefrom as follows:

| | 1952 | 1953 | 1954 | 1955 | 1956 |
|---|---|---|---|---|---|
| Total deductions | $1,125,538.63 | $1,012,075.81 | $792,794.61 | $623,088.06 | $556,069.58 |
| Less: | | | | | |
| Gross income | 364,249.73 | 493,962.15 | 314,222.48 | 333,924.76 | 245,264.22 |
| Specially treated deductions | 13,516.87 | 14,295.72 | 18,141.60 | 5,008.54 | 33,970.74 |
| Total gross income plus specially treated deductions | 377,766.60 | 508,257.87 | 332,364.08 | 338,933.30 | 279,234.96 |
| Excess of deductions over gross income plus specially treated deductions | 747,772.03 | 503,817.94 | 460,430.53 | 284,154.76 | 276,834.62 |

For the years 1953, 1955, and 1956 petitioner incurred losses from his other business activities, including the oil-producing business.

On his return for 1952, petitioner claimed depreciation on two airplanes used in connection with his trade or business. The amounts claimed were $31,635.70 on a Douglas DC-3 and $9,512.97 on a Beechcraft, or a total claimed depreciation allowance with respect to the two aircraft of $41,148.67. On his return for 1954, petitioner claimed depreciation on the Beechcraft in the amount of $9,512.96.

Both airplanes had been used prior to their purchase by petitioner. Depreciation on both was computed on a straight-line basis with an annual depreciation rate of 25 percent. No salvage value was assigned either aircraft by petitioner in his depreciation computation.

The original cost basis of the DC–3 was $126,542.81. As of December 31, 1952, its adjusted cost basis was $20,440.56. It had been acquired in 1948 and was sold by petitioner in April 1953, along with an aircraft tractor truck, for $135,000. Gain on the sale of the airplane and the tractor truck was reported on the 1953 return as $124,309.23.

The original cost basis of the Beechcraft was $38,051.86. As of December 31, 1952, the undepreciated cost of this plane was $18,330.61. It had been acquired in 1950 and was sold by petitioner in 1955, together with an airplane motor, for $64,200. This entire amount was reported by the petitioner on his 1955 return as the gain on the sale.

The respondent disallowed farm loss deductions with respect to the Lockhart Ranch in the amount of $697,772.03 for 1952 and in the amount of $410,430.53 for 1954. The respondent also disallowed depreciation deductions claimed for the years 1952 and 1954 with respect to the aircraft in the respective amounts of $41,148.67 and $9,512.96.

OPINION

With respect to the Lockhart Ranch losses, the dispute between the parties centers on the meaning of the phrase "deductions allowed" as used in the first sentence of section 270 of the 1954 Code.[1] The petitioner contends that these words necessarily refer to deductions from which the taxpayer derives a tax benefit. Thus, since during the

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

SEC. 270. LIMITATION ON DEDUCTIONS ALLOWABLE TO INDIVIDUALS IN CERTAIN CASES.

(a) RECOMPUTATION OF TAXABLE INCOME.—If the *deductions allowed* by this chapter or the corresponding provisions of prior revenue laws (other than specially treated deductions, as defined in subsection (b)) allowable to an individual (except for the provisions of this section or the corresponding provisions of prior revenue laws) and attributable to a trade or business carried on by him for 5 consecutive taxable years have, in each of such years (including at least one year to which this subtitle applies), exceeded by more than $50,000 the gross income derived from such trade or business, the taxable income (computed under section 63 or the corresponding provisions of prior revenue laws) of such individual for each of such years shall be recomputed. For the purpose of such recomputation in the case of any such taxable year, such deductions shall be allowed only to the extent of $50,000 plus the gross income attributable to such trade or business, except that the net operating loss deduction, to the extent attributable to such trade or business, shall not be allowed.

(b) SPECIALLY TREATED DEDUCTIONS.—For the purpose of subsection (a) the specially treated deductions shall be taxes, interest, casualty and abandonment losses connected with a trade or business deductible under section 165(c)(1), losses and expenses of the trade or business of farming which are directly attributable to drought, the net operating loss deduction allowed by section 172, and expenditures as to which taxpayers are given

5-year period 1952–56 the petitioner had losses from his other operations in 1953, 1955, and 1956, he contends that he received no tax benefit from the ranch losses in those years and concludes therefrom that the required excess of "deductions allowed" did not occur in the 5 consecutive taxable years as specified by section 270.

We do not agree with this construction of the statute.

In *Virginian Hotel Co.* v. *Helvering*, 319 U.S. 523 (1943), the Supreme Court rejected a similar tax benefit construction of the word "allowed" as used with respect to depreciation in the determination of the basis for gain or loss. We see no reason to depart from that rule here, particularly when to do so would warp the plain purpose of the statute.

Section 270, and its predecessor section 130 of the Internal Revenue Code of 1939, was adopted originally as an amendment by the Senate Finance Committee and became part of the Revenue Act of 1943. The debate on the floor of the Senate explained that the amendment was designed to deal with so-called "hobby losses." (90 Cong. Rec. 224–232 (1944).) Nowhere in the rather extensive debate was there the slightest suggestion of a tax benefit rule such as is now advanced by petitioner. Rather it was made clear that the tests set out in the section were for the purpose of determining whether the particular loss activity was to be treated as an ordinary trade or business or not.

The Finance Committee's own explanation of the provision stated, in part:

Thus, under the committee bill, if a taxpayer conducted a trade or business for five consecutive years, and in each of such years he had a net loss of $50,000, his tax liability for each of such years would have to be recomputed and only $20,000 of such net loss could be applied against his other income for that year. [S. Rept. No. 627, 78th Cong., 1st Sess., p. 27 (1943).]

---

the option, under law or regulations, either (1), to deduct as expenses when incurred or (2) to defer or capitalize.

(c) REDETERMINATION OF TAX.—On the basis of the taxable income computed under the provisions of subsection (a) for each of the 5 consecutive taxable years specified in such subsection, the tax imposed by this subtitle or the corresponding provisions of prior revenue laws shall be redetermined for each such taxable year. If for any such taxable year assessment of a deficiency is prevented (except for the provisions of section 1311 and following) by the operation of any law or rule of law (other than section 7122, relating to compromises), any increase in the tax previously determined for such taxable year shall be considered a deficiency for purposes of this section. For purposes of this section, the term "tax previously determined" shall have the meaning assigned to such term by section 1314(a)(1).

(d) EXTENSION OF STATUTE OF LIMITATIONS.—Notwithstanding any law or rule of law (other than section 7122, relating to compromises), any amount determined as a deficiency under subsection (c), or which would be so determined if assessment were prevented in the manner described in subsection (c), with respect to any, taxable year may be assessed as if on the date of the expiration of the time prescribed by law for the assessment of a deficiency for the fifth taxable year of the 5 consecutive taxable years specified in subsection (a), 1 year remained before the expiration of the period of limitation upon assessment for any such taxable year. [Emphasis supplied.]

It is significant that the quoted language makes the occurrence of net *losses* of given amounts over a period of years the operative fact, not whether or not those losses had actually been used to offset otherwise taxable income from other sources.

Of course, while petitioner argues that he derived no tax benefit from the Lockhart Ranch deductions in 1953, 1955, and 1956, the actual existence of a tax benefit cannot be determined in the absence of information as to the existence of loss carryovers and carrybacks, and, on this aspect of the matter, petitioner remains completely silent. Moreover, petitioner does not suggest how, in applying the tax benefit rule for which he argues, specific items of deduction are to be identified as having given rise to a tax benefit.

We also note that, while petitioner does not point this out, the acceptance of his position would require that he have had taxable income from all other sources in each of the 5 consecutive years involved in an amount at least equal to $50,000 plus the specially treated deductions. Only thus would he have received tax benefits which would equate with the "deductions allowed" as used in section 270. Therefore, petitioner is in effect seeking to add an entirely new test to the statute. He would have applicability of section 270 turn, not simply upon the earnings history of the loss operation, but also upon the profit characteristics of the rest of a taxpayer's activities. Such an approach is proscribed by the regulations which state categorically: "For the purposes of section 270, each trade or business shall be considered separately." Sec. 1.270-1 (a) (4), Income Tax Regs.

We agree with petitioner that Congress' major concern in the enactment of section 270 was to prevent the offsetting of otherwise taxable income. However, we do not agree when he states on brief that "the statute is only intended to apply where there is a tax benefit involved." Petitioner would have us confuse the "applicability" of the section with its tax consequences. Section 270 is "applicable" and the taxpayer's taxable income is recomputed irrespective of the tax result. Obviously, if no tax increase results from that recomputation in any given year, then there is no redetermination of tax. That Congress itself considered the tests for applicability of section 270 and the requirement for recomputation separate from and not interdependent upon a tax redetermination is borne out by the fact that the former are found in subsection (a) and the latter in subsection (c).

Petitioner also argues that section 270, as construed by the respondent and, as set out above, by this Court, is unconstitutional. He contends that, since the section is an integral part of the income tax, its constitutionality must be tested by the 16th amendment (citing *Eisner* v. *Macomber*, 252 U.S. 189 (1920)) and not by the general taxing power, and that the holding of *Penn Mutual Indemnity Co.*,

32 T.C. 653 (1959), affd. 277 F. 2d 16 (C.A. 3, 1960), is not applicable. However, petitioner's analysis is the very one which we rejected in *Penn Mutual*. We pointed out there that the 16th amendment did not confer any new power of taxation nor did it put any new limits on that power. We stated:

The 16th amendment merely made it clear that income taxes, regardless of the source of the income, were not subject to the apportionment requirement. * * * [32 T.C. 653, 665.[2]]

Under this view of the 16th amendment, petitioner has failed to disclose any basis for our holding section 270 to exceed the constitutional power to tax. (Petitioner specifically refuses to ground his argument upon whether the tax at issue is direct or indirect.) Petitioner also argues that section 270, as applied here, results in an arbitrary taking of property in violation of the fifth amendment. The grounds for this claim are not clear. Certainly, it is well established that deductions are a matter of legislative grace. *Stanton* v. *Baltic Mining Co.*, 240 U.S. 103 (1916); *Burnet* v. *Thompson Oil & G. Co.*, 283 U.S. 301, 304 (1931); *Helvering* v. *Ind. Life Ins. Co.*, 292 U.S. 371, 381 (1934); *New Colonial Co.* v. *Helvering*, 292 U.S. 435, 440 (1934); *White* v. *United States*, 305 U.S. 281, 292 (1938); *Commissioner* v. *Sullivan*, 356 U.S. 27, 28 (1958). Here Congress has not disallowed all deductions as would be the case with respect to personal, living expenses. Sec. 262. Nor has Congress allowed the deduction of losses here only to the extent of the gross income from the operation as with respect to gambling transactions. Sec. 165(d). Indeed, under section 270, deductions are disallowed only if they exceed the gross income from the loss operation *plus* $50,000 *plus* specially treated deductions.

Petitioner testified that he entered into and conducted the Lockhart Ranch operation as a business for profit. However, in addition to losses ranging several hundred thousand dollars in each of the 5 years 1952–56, the record is devoid of any evidence whatever that the Lockhart Ranch was ever operated at a profit in any year since its acquisition in the late 1920's.

Far from being arbitrary, section 270 represents a reasonable exercise of the taxing power. We hold the section constitutional. The respondent is sustained on this issue.

The sole remaining issue concerns the depreciation of petitioner's airplanes. Section 23(l) of the 1939 Code and section 167 of the 1954 Code both provide for a reasonable allowance for exhaustion, wear and tear, and obsolescence of property used in the trade or business. The regulations provide that an asset shall not be depre-

---

[2] See also dissent in *Penn Mutual* which is in complete agreement with this construction of the 16th amendment. 32 T.C. 653, 677 *et seq.*

ciated below a reasonable salvage value under any method of computing depreciation.[3]

Salvage value cannot be estimated at zero where the item actually will have a substantial resale value at the end of the useful life to the taxpayer, and where salvage value exceeds undepreciated cost, no further depreciation is allowed. *Bell Lines, Inc.*, 43 T.C. 358 (1964); *Brandtjen & Kluge, Inc.*, 34 T.C. 416 (1960); *Joseph W. Brown*, 40 T.C. 861 (1963).

Furthermore, where the taxpayer fails to assign a salvage value to an asset, he has the burden of proving that the commissioner erred in treating actual sales price as indicative of salvage value. *Joseph W. Brown, supra; C. L. Nichols*, 43 T.C. 135 (1964).

In this case salvage was not taken into account and the effect of the Commissioner's determination is merely to prevent depreciation charges from reducing the adjusted cost basis of the airplanes below reasonable salvage value.

Petitioner offered no evidence on salvage value. The only evidence presented by petitioner goes to useful life. But if the useful life adopted by the petitioner is considered proper, it is evident from the record that substantial salvage value should have been taken into consideration. The record clearly sustains respondent's determination. *C. L. Nichols, supra.*

*Decision will be entered for the respondent.*

---

[3] Sec. 1.167(a)–1 Depreciation in general.

* * * The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 167(g) and § 1.167(g)–1. *An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation.* * * * [Emphasis supplied.]

(b) *Useful life.* * * * Salvage value is not a factor for the purpose of determining useful life. * * * The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. * * *

(c) *Salvage.* (1) Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business * * *. However, if there is a redetermination of useful life under the rules of paragraph (b) of this section, salvage value may be redetermined based upon facts known at the time of such redetermination of useful life. * * * If the taxpayer's policy is to dispose of assets which are still in good operating condition, the salvage value may represent a relatively large proportion of the original basis of the asset. However, if the taxpayer customarily uses an asset until its inherent useful life has been substantially exhausted, salvage value may represent no more than junk value. Salvage value must be taken into account in determining the depreciation deduction either by a reduction of the amount subject to depreciation or by a reduction in the rate of depreciation, but in no event shall an asset (or an account) be depreciated below a reasonable salvage value.

[Similar regulations appear under the 1939 Code. See sec. 39.23(1)–1, 2, and 5, Regs. 118.]