Victor Borge and Sanna Borge v. Commissioner. Danica Enterprises, Inc. v. Commissioner.
Borge v. Commissioner
Docket Nos. 6328-65, 6329-65.
United States Tax Court
T.C. Memo 1967-173; 1967 Tax Ct. Memo LEXIS 87; 26 T.C.M. (CCH) 816; T.C.M. (RIA) 67173; August 24, 1967
Benjamin Alpert, 810 Broad St., Newark, N.J., Martin J. Milston, 401 E. 89th, New York, N. Y., and Miles J. Sachs, for petitioners. Paul R. Frankel, Richard J. Mandel and Robert S. Gorin, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined *88 deficiencies in income tax against the Borges and Danica as follows: Year
Borges
Danica
1958
$75,667.51
1959
62,983.39
$ 4,932.27
1960
58,178.00
1,847.21
1961
56,892.00
5,632.80
1962
22,927.00
60,713.00
The issue for decision in the Borge cases is whether the Commissioner erred in allocating and taxing to Victor in each of the first four tax years, under sections 61 and 482 of the Internal Revenue Code of 1954, $75,000 and, in 1962, $25,000 of income received by Danica Enterprises, Inc. and never transferred to Victor. The issue for decision in the Danica Enterprises, Inc. cases is whether the Commissioner erred in disallowing a deduction in each of its first three fiscal years ended February 28 or 29, 1959, 1960 and 1961 for that portion of its net loss in excess of $50,000 in operating its poultry business, and in disallowing net loss carry-overs from its fiscal years (1) 1959 to 1960 (2) 1959 and 1960 to 1961, and (3) 1959 and 1960 to 1962 under section 269 of the Internal Revenue Code of 1954. Findings of Fact The Borges are husband and wife who resided during the tax years in Connecticut *89 and filed joint returns for 1958 and 1959 with the director of internal revenue for the district of New York, New York, and for 1960, 1961 and 1962 with the director of internal revenue for the district of Newark, New Jersey. They have five children. Danica Enterprises, Inc. is a Connecticut corporation which had its principal office during the tax years at Newark, New Jersey and filed its returns for its fiscal years ended February 28, 1959 and February 29, 1960, with the director of internal revenue for the district of New York, New York and its returns for its fiscal years ended February 28, 1961 and 1962 with the director of internal revenue for the district of Newark, New Jersey. Victor is and was during the tax years a well-known and very successful professional entertainer. He had large income from that profession at all times material hereto. He purchased a farm property of about 400 acres at 4 Poverty Road, Southbury, Connecticut in April 1952 and resided in the main building there with his wife and children from 1952 at least through the tax years. He sold some pheasants and ducks raised on the farm and first learned of the rock cornish hen from the farm foreman. Victor *90 knew nothing about the poultry business in 1952 or 1953, but he began to think that he would like to sell a product which he could sponsor. He conducted a poultry business on the farm from April 1952 until March 1, 1959. The trade name of that business was "ViBo Farms" and the registered trademark of his poultry products was "ViBo." Victor employed a new manager for the ViBo business on two occasions in his efforts to improve production, processing and sales of the chickens, which he called rock cornish game hens. A rock cornish game hen is a superior chicken produced by a cornish rooster and a white rock hen. It matures in from 5 to 6 weeks and has a high ratio of meat to bone. It is not a game bird and need not be a hen, so far as the record discloses. Victor met Allan Altman in 1953 and thereafter occasionally received advice from him in regard to the ViBo business. Altman was hired as manager at the beginning of 1956. Sales were being made by mail, directly to hotels and restaurants, and to stores at wholesale. Victor hired George Campbell in 1956 as his advance press agent and general public relations man. This employment continued at all times material hereto without *91 change. The following table shows the gross income earned by Victor in each calendar year from entertainment and ViBo losses claimed by him: Gross
ViBo
Year
Income
Losses
1954
$ 628,082.85
$ 62,158.71
1955
496,655.17
79,486.40
1956
1,145,981.21
345,879.04
1957
858,964.65
220,145.95
1958
802,458.53 *
23,133.48 (Jan. &
Feb.)
1959
1,036,554.19
1960
968,403.13
1961
975,704.40
1962
772,145.35
1963
925,205.10
Mortimer S. Rosenthal, a lawyer in New York City, advised Victor and acted as his counsel during the tax years. He always considered Victor's tax obligations. He advised Victor to form the Danica corporation and did the legal work in organizing it. He consulted a certified public accountant in regard to possible Federal income tax consequences which might result from the transfer of the ViBo business and Victor's entertainment income to Danica. Danica was incorporated in February 1958 and on March 1, 1958 it issued its stock to Victor in exchange for the assets of ViBo, subject to its existing liabilities. Victor has always been the President *92 and sole stockholder of Danica. Victor retained title to the land and buildings. The operation of ViBo did not change after the transfer to Danica and the record does not show what, if anything, Danica did in the operation of the ViBo business. Danica claimed deductions on its returns for all losses from the ViBo poultry business beginning March 1, 1958 and at least through February 28, 1963. The Commissioner in determining the deficiencies against Danica disallowed under section 269, Internal Revenue Code of 1954, deductions for net losses claimed by Danica from the operation of its poultry business to the extent of $259,557.24 for the fiscal year ended February 28, 1959, $144,346.53 for the fiscal year ended February 29, 1960 and $19,473.00 for the fiscal year ended February 28, 1961. The disallowance for each year was the amount of the net loss claimed for that year less $50,000. Victor, when he appeared professionally, was sometimes able to obtain free advertising for himself and his ViBo business in various sections of local newspapers, in supermarkets, and on radio and television. Occasionally a magazine with national circulation would publish an article *93 relating to his profession and his ViBo poultry business. Victor and Danica entered into an agreement on March 1, 1958, to continue to February 28, 1963, in which, inter alia Danica employed Victor to help promote and publicize its business activities and to perform artistic and professional services on television, radio and theatrical presentations. Danica agreed to pay Victor $50,000 per year for his artistic and professional services under the contract and for his promotional work for ViBo products. Victor would not have entered into such a contract with an unrelated party. Victor was free to and did perform and appear professionally on his own behalf aside from the contract. A copy of the contract is incorporated herein by this reference. Victor, to advertise Pontiac automobiles, performed in "The Victor Borge Show" for which he received $200,000 net under a contract dated October 22, 1957. Danica entered into a contract dated July 24, 1958 to furnish the entertainment portion of television spectaculars starring Victor on behalf of the Pontiac Division of General Motors Corporation for $225,000 net for each performance. Such spectaculars were telecast in November 1958, October *94 1959, March and October 1960, October 1961 and February 1963. Danica received $226,000 for each of the first two, $225,000 for each of the next two and $250,000 for each of the last two. Victor guaranteed that contract. The only compensation which Danica paid Victor was $50,000 in 1962 and $50,000 in 1963. It deducted those payments as officer's compensation on its fiscal year returns for 1962 and 1963. The record does not disclose anything done by Danica to earn or assist in the earning of the entertainment income which it reported. The only adjustment made in the deficiency notice to the Borges, which is in dispute herein, is the one explained therein as follows: (a) It has been determined that under the provisions of Sections 61 and 482 of the Code of 1954 income from the phase of the business in the entertainment field of Danica Enterprises, Inc., for the calendar years and in the amounts shown in the table below be ascribed to you and be added to your taxable income: 1958
1959
1960
1961
1962
Income subject to allocation
$75,000
$75,000
$75,000
$75,000
$75,000
Less compensation received and
50,000
reported
Net
$75,000
$75,000
$75,000
$75,000
$25,000
*95 Victor's and Danica's poultry operations (pennies omitted) were as follows: Victor Borge
Victor Borge
1953
1954
1955
1956
Sales - net
$ 5,637
$36,952
$118,973
$260,317
Cost of sales
20,599
69,785
136,129
428,181
Gross Profit (loss)
( 14,962)
( 32,833)
( 17,156)
( 167,864)
Sale of equip
Other deductions -
net of other
income
11,703
29,326
62,330
178,015
NET LOSS
($26,665)
($62,159)
($79,486)
($345,879)
Victor Borge
Danica Enterprises, Inc.
Fiscal Years Ended
February 28,
1/ 1/58
1957
2/28/58
1959
1960
Sales - net
$682,560
$121,020
$745,592
$508,953
Cost of sales
567,448
84,091
547,529
388,895
Gross Profit (loss)
115,112
36,929
198,063
120,058
Sale of equip
Other deductions -
net of other
income
335,258
60,062
507,620
314,404
NET LOSS
($220,146)
($ 23,133)
($309,557) *
($194,346)
Danica
Danica Enterprises, Inc.
Enterprises,
Inc.
Fiscal Years Ended February 28,
1961
1962
1963
Sales - net
$111,567
$69,992
$28,046
Cost of sales
145,644
69,946
37,563
Gross Profit (loss)
(34,077)
46
(9,517)
Sale of equip
(8,000)
Other deductions -
net of other
income
35,396
37,843
48,069
NET LOSS
($69,473)
($29,797)
($57,586)
*96 All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: Victor Borge is a very talented man. He is not only a great pianist but a subtle entertaining comedian too. He came to the United States from Denmark and has made himself famous here. He has also made a great deal of money from personal appearances and performances on T.V. and radio. He bought a farm in Connecticut and that led him to engage in a poultry business, soon limited to what he called rock cornish game hens. He incurred large losses in that business which he deducted from his much larger earnings as an entertainer. Victor relied upon Rosenthal's advice and guidance in all legal and income tax matters. Rosenthal hoped to find some means of establishing a corporation to be owned by Victor which would make him secure financially aside from his future earnings, or lack of earnings, from professional engagements. The petitioners claim that Danica was created primarily for that purpose and was not created primarily to avoid the effects of section 270 or other tax consequences. *97 Cf. Frank Spingolo Warehouse Co., 37 T.C. 1. The determination of the Commissioner, limiting Danica's deductions for losses sustained by the ViBo business to $50,000 in each of its tax years, is presumed to be correct and the petitioners have the burden of proving it incorrect. They have failed to sustain that burden. The most persuasive evidence supports the Commissioner's determination. Victor, as sole proprietor of his poultry business, had sustained losses in that business in excess of $50,000 for the years 1954, 1955, 1956 and 1957. If this had continued through 1958, section 270 might have been applicable. Victor continued to own and operate the business through the first two months of 1958 and sustained a loss of $23,133.48 for that period. Market conditions were unfavorable to ViBo in 1958. Rosenthal was aware of the impending tax consequences and, in an effort to avoid or lessen them, advised and arranged the incorporation of Danica and the transfer of the ViBo business to it. Danica had no means of meeting a large loss from the operation of the ViBo business which could reasonably be expected and that difficulty was met by providing for a part of Victor's *98 large earnings from entertaining to be diverted for five years through Danica for payment of the ViBo losses. The evidence does not show that Danica otherwise contributed to, or took any part in, the conduct of the ViBo business or that the conduct of that business changed in any way after February 1958. Nor does the evidence show that Danica aided Victor in his entertainment business. Those who contracted with Danica and paid for Victor's services required him to guarantee personally the contract which was made with Danica. There was no change in the conduct of his entertainment business after February 1958. Its earnings were attributable solely to the services of Victor. The Commissioner did not err in denying Danica's deductions for ViBo losses in each year in excess of $50,000. Victor acquired control of Danica "after October 4, 1940" and the Commissioner had reason to hold that "the principal purpose for which such acquisition was made" was evasion of Federal income tax within the meaning of section 269(a)(1), I.R.C. 1954. See also sec. 270(a), I.R.C. 1954. Pauline W. Ach, T.C. 114, aff'd, 358 F. 2d 342, certiorari *99 denied 87 U.S. 205; James Realty Co. v. United States, 280 F. 2d 394. Cf. L. M. Lockhart, 43 T.C. 776; Thomas E. Snyder Sons Co., 34 T.C. 400, affd. 288 F. 2d 36; Army Times Sales Co., 35 T.C. 688. The contract between Danica and Victor provided that Danica would pay Victor $50,000 annually for his services under the contract. It paid him nothing in 1958, 1959, 1960 and 1961 but paid him $50,000 in 1962 and in 1963. The Commissioner determined that Victor should have received $75,000 from Danica in each tax year for his services. He allowed Danica to deduct that amount each year and increased Victor's income to correspond. That action seems conservative in view of the fact that Victor earned all of the income which Danica received. Cf. Helvering v. Horst, 311 U.S. 122; Pauline W. Ach, supra; Nat Harrison Associates, 42 T.C. 601, 622. However, his allocation of the amounts to Victor's taxable income is clearly within section 482, I.R.C. 1954, as "necessary in order to prevent evasion of taxes or clearly to reflect the income of" Danica and Victor, *100 the sole owner of Danica. Lucas v. Earl, 281 U.S. 111, 115. See sec. 61, I.R.C. 1954. Counsel for the petitioners devote a substantial part of their briefs to questions not raised by the pleadings and thus not properly raised or in issue here. Those questions merit no discussion or answer by this court. Decisions will be entered for the Commissioner. Footnotes
*. The figures shown for 1958 through 1963 include the amounts received by Danica.↩
*. Danica's loss from the operation of ViBo farms for the last ten months of 1958 was in excess of $50,000.↩