Beverly J. Hill v. Commissioner.
Hill v. Commissioner
Docket No. 3601-65.
United States Tax Court
T.C. Memo 1967-249; 1967 Tax Ct. Memo LEXIS 12; 26 T.C.M. (CCH) 1287; T.C.M. (RIA) 67249; December 15, 1967
Beverly J. Hill, pro se, Arcadia, Calif. Martin R. Simon, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent, by statutory notice dated March 24, 1965, determined deficiencies in Federal income tax of the petitioner and her former husband, Robert D. Hill, as follows: Addition
to Tax
Year
Deficiency
[1] sec. 6654(a) 1961
$1,165.06
1962
2,038.44
$78.16
1963
4,318.55
*13 Respondent has stipulated to the allowance of additional specific deductions, described below, and an investment credit not taken by petitioner for the taxable year 1963. The remaining issues for decision are: Whether petitioner realized $525 in capital gain income representing 50 percent of the total gain on the sale of a racehorse, which she failed to report in 1962, the year of sale. Whether petitioner is entitled to deduct all or any part of the horse training expenses claimed in her returns for the years 1962 and 1963. Whether petitioner understated income on her returns for the years 1961, 1962, and 1963 on account of excessive deductions for travel and soliciting expenses. Whether petitioner is entitled to deduct in 1963 as office supplies expense an amount in excess of the $8,235.46 allowed. The total amount of such expenses claimed in 1963 is $28,235.46. Whether depreciation on an automobile was correctly computed. Whether petitioner is subject to an addition to the tax for the year 1962 of $78.16, as provided by section 6654. Some of the facts have been stipulated by the parties *14 and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioner is an individual whose legal residence was in Arcadia, California, during the years 1961, 1962, and 1963, and at the time of filing of the petition. She and her former husband, Robert D. Hill, filed joint Federal income tax returns for the years 1961, 1962, and 1963, on a cash method of accounting basis with the district director of internal revenue, Los Angeles, California. Robert D. Hill filed no petition in the Tax Court in regard to the joint notice of deficiencies in income taxes mailed to him and petitioner on March 24, 1965 for the years 1961, 1962, and 1963, and, pursuant thereto, assessment was entered against him on August 6, 1965. The assessment remains unpaid. [2]
Respondent has stipulated *15 to the allowance of additional specific deductions not taken on the 1963 returns as follows: Contributions
$104.00
State Sales Tax
195.00
Gas Tax
104.00
Auto Licenses
105.00
State Income Tax
168.50
$676.00
Respondent has further stipulated that petitioner is entitled to an additional deduction for depreciation in the amount of $161.81 on certain purchases of office furniture: February 26, 1963
$ 143.94
March 22, 1963
2,579.46
December 21, 1963
114.40
Further, it is agreed that petitioner is entitled to an investment credit for the calendar year 1963 in the amount of $1,280.93. Robert D. Hill was engaged in the collection business for several years with offices located in Arcadia, California. In 1963, he acquired a number of Las Vegas casinos and hotels as clients for whom he collected bad checks and this expanded his business substantially. In addition, he and the petitioner engaged in the racing of horses as a business. In about 1964, he disappeared and has not been located since that time. All of his business records also disappeared or were destroyed with the result that they apparently were not available for the respondent's *16 audit and the petitioner was able to introduce no records to support the tax returns with respect to the horse racing and collection business transactions placed in dispute by the statutory notice. 1. Horse Racing Business Issues From 1958 to 1964 the petitioner and her former husband, Robert D. Hill, owned and raced horses. Over this period they owned or had fractional interests in 11 different horses, each of which ran in about 20 races. Petitioner devoted a substantial part of her time to traveling and arranging participation in races in California and Mexico. Petitioner and her husband boarded the horses at a nearby ranch and employed trainers, paying them wages plus a percentage of the winnings. Respondent does not question that these racing activities constituted a business except for the year 1963. (a) Capital Gains. Respondent determined that the petitioner's 1962 income tax return omitted capital gain income of $525 realized under Code section 1231 when a racehorse was claimed for $3,000. [3] Petitioner does not contest the fact that a horse was claimed in 1962, but contends that the claimed horse was one only partially owned by her and her husband. Petitioner had no *17 records as to the horse racing business. Her former husband made all the financial arrangements for purchasing horses and she had no direct knowledge as to the costs of the horses. Her former husband kept all the records and prepared the returns, and petitioner's testimony was given from a hazy recollection. From the testimony and the 1961 and 1962 income tax returns we find that petitioner and her husband in these years had a one-third interest in two horses, and owned outright one horse which had a remaining cost basis of $1,950 at the end of 1961. At the end of 1962, according to the 1962 income tax return, petitioner had a one-third interest in only one horse, which was one of the horses partly owned at the end of 1961. By the end of 1962, the petitioner's husband had sold their interest *18 in the other partly-owned horse. As to the third horse, the one which was wholly owned and which had a remaining cost basis of $1,950, we find that it was the one which was claimed from petitioner at $3,000. The 1962 income tax return does not report this $1,050 long term capital gain. On the record, we must sustain the respondent as to this issue. (b) Training Expenses. The second issue is whether petitioner is entitled to deduct all or any part of training expenses claimed in her 1962 and 1963 returns. Respondent disallowed $1,904.04 of claimed 1962 training expenses of $6,986.50 for lack of substantiation, and disallowed all the 1963 expenses of $534.00 on the ground that petitioner was no longer engaged in the horse racing business in 1963. At trial, petitioner was unable to offer any evidence to substantiate training expenses in excess of the amount allowed for 1962. Although she testified that she had two horses in 1962, and that the "going rate" for horse training was $14 per day, she had no idea how long the horses were in training for that year. Thus, we must sustain respondent's determination as to the 1962 expenses. Respondent contends that petitioner was no longer *19 in the racing business in 1963. So far as the record indicates, the only changed circumstance from 1962 to 1963 was that the horse owned in 1963 did not race during that year. Respondent, by allowing deductions for substantial training expenses in 1962, has, in effect, conceded that petitioner was engaged in the business of racing horses for that year. Petitioner testified, and we believe, that the horse was entered in a race in 1963 although it did not run. Nothing in the record indicates that the racing activity, concededly a business in prior years, became a social activity or hobby in 1963. We find that petitioner was still in the horse racing business in 1963, and is entitled to the claimed deduction of $534 for training expenses. 2. Collection Business Issues Petitioner knew even less about her former husband's collection business than the horse racing business. In her words, "I ran the home and he ran the office." And, as noted above, we are without benefit of any business records to assist in resolving the issues. [4]
*20 (a) Travel and Soliciting Expenses. Respondent has disallowed travel and soliciting expenses of $2,486.97 for 1961, $3,229.00 for 1962 and $1,250.27 for 1963 compared with $4,236.97 claimed for 1961, $5,106.23 for 1962, and $1,541.14 for 1963. The only explanation given in the notice of deficiency was lack of substantiation. At trial, petitioner was able to testify only generally as to alleged business trips made by her former husband. She knew nothing precisely as to his expenses. On this record we are unable to find that petitioner is entitled to deductions greater than those allowed by respondent. Cf. Karl R. Martin, 44 T.C. 731, 734 (1965). (b) Office Supplies. It is uncontested that the collection business operated by petitioner's former husband increased substantially in 1963. Petitioner testified, and we have found, that this increase came from the acquisition of collection accounts from certain hotels and casinos in Las Vegas. In 1963 petitioner reported expenses of $28,235.46 for "office supplies." Respondent disallowed $20,000 of this amount. It is apparent from petitioner's testimony at trial that many of the items she believes were included under "office *21 supplies" were in fact equipment which should have been capitalized rather than expensed. Respondent has allowed additional depreciation for those items petitioner was able to substantiate, and allowed an amount slightly greater than the average amount deducted for office supplies in the two previous years. While we agree in principle with respondent's determination, we find that the amount allowed for office supplies and expense for 1963 should be increased. It is clear from petitioner's tax returns for 1961-1963 that expenses attributable to the collection business increased substantially in 1963. The following table taken from information contained in the petitioner's income tax returns shows a comparison of the major expenses, the gross receipts and the disputed office expense. 1961
1962
1963
Telephone
$ 12,397.58
$ 11,956.63
$ 15,279.63
Salaries
106,034.29
100,913.32
131,373.84
Sales Expense
6,186.16
7,982.43
10,818.53
Gross Receipts
212,041.38
212,731.08
240,026.56
Office Expense
6,881.67
7,811.17 Thus, while the deductions for salaries, telephones and sales expense, allowed by the respondent, increased from 28 to 35 percent *22 in 1963, and the gross receipts increased 13 percent, the increases allowed by respondent for office supplies (8,235.46) is only approximately 5 percent. The facts of record call for application of the rule of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), and it is on the basis of that decision that we have found that petitioner is entitled to a deduction of $10,154.52, an increase of 30 percent over the 1962 expenses allowed. (c) Depreciation on Automobile. Petitioner's husband purchased an automobile in 1960 for $4,679.86, and claimed depreciation based on a four-year useful life under the declining balance method in the following amounts: Adjusted Basis
Amount
Amount
Year
on Return
Claimed
Allowed
1960
$4,679.86
$1,559.96
$1,559.96
1961
3,119.90
1,559.95
219.90
1962
1,559.95
779.98 Respondent disallowed the claimed depreciation on the ground that it would depreciate the asset below its reasonable salvage value. See section 1.167(b)-2(a), Income Tax Regs.; Hertz Corp. v. United States, 364 U.S. 122 (1960). Petitioner offered no evidence to show that the salvage value was *23 different from that determined by respondent. The burden was on petitioner to show error in respondent's determination, and, since she failed to do so, we must sustain the respondent's determination. Joseph W. Brown, 40 T.C. 861, 868-869 (1963). 3. Addition to Tax Respondent has determined that petitioner is liable for an addition to the tax for the year 1962 under section 6654(a), [5] for failure to pay her estimated tax. Petitioner offered no evidence to the contrary, and petitioner's tax return for 1962 clearly bears out the respondent's determination that estimated tax payments were owing. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The fact that this assessment has already been made against her former husband does not deprive the petitioner of the right to file a separate petition in this Court for redetermination of the deficiencies. See Marie Dolan, 44 T.C. 420 (1965); Eva M. Manton, 11 T.C. 831 (1948); Nadine I. Davenport, 48 T.C. No. 89↩ (1967).
3. A "claiming race" is one where all the horses are entered with a sales price put on them. See Jacobs v. Joseph, 282 App. Div. 622, 126 N.Y.S. 2d 274↩ (Sup. Ct., 1st Dept. 1953). Petitioner testified that a prospective purchaser must signify his intent to purchase prior to the running of the race, and is obligated to pay the claiming price regardless of the outcome of the race.
4. The administrative settlement process is obviously more conducive to a just disposition of such factual issues, particularly where a taxpayer like this one neither participated substantially in the management of the businesses in which the disputed transactions arose nor had access to the business records on such transactions. But the parties were unable to reach a complete agreement. We have no alternative but to apply the law to the facts established by the trial record.↩
5. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. - In the case of any underpayment of estimated tax by an individual, * * * there shall be added to the tax under chapter 1 for the taxable year an amount determined at the rate of 6 percent per annum upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)).↩