BELL LINES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4619–63.    Filed December 31, 1964.

*Fuller Holloway* and *William H. Bradford, Jr.*, for the petitioner.
*John J. Larkin*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year 1959 in the amount of $70,878.40.

Certain of the issues raised by the pleadings have been settled by stipulation of the parties. The issues remaining for decision are

whether petitioner is entitled to a deduction for depreciation on certain of its truck tractors which were disposed of in 1959 at prices in excess of the adjusted bases thereof as of the beginning of the year, and whether in computing the allowance for depreciation on certain other truck tractors salvage value of 20 percent of cost should be used, as determined by respondent, or 10 percent should be used, as contended by petitioner.

## FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner was incorporated under the laws of West Virginia on or about June 18, 1945. It is engaged in the business of operating an interstate trucking line in West Virginia, Ohio, North Carolina, Pennsylvania, South Carolina, Tennessee, Indiana, Virginia, and Kentucky. It operates terminals, trucks, and related equipment as a common carrier regulated by the Interstate Commerce Commission. It has its principal office at Charleston, W. Va. It filed its Federal income tax return for the taxable year 1959 on an accrual method of accounting with the district director of internal revenue at Parkersburg, W. Va.

Petitioner's truck tractors are all diesel powered with both single- and twin-drive axles. In 1959 the average length of haul for each truck tractor was 312.9 miles and the average mileage per truck tractor was a little over 85,000 miles.

In 1959 petitioner disposed of 144 truck tractors and reported total net gain therefrom of $578,803.21. Thirty-nine of these had been acquired in 1955 and 1956 at a total cost of $365,000.76 and were disposed of at a total price of $219,400. In computing its depreciation allowance on these 39 truck tractors, the petitioner used an estimated useful life of 4 years for 30 of them and 6 years for 9 of them, and used a salvage value of $100 per unit or an aggregate of $3,900 for all of the 39 truck tractors. As a consequence, these 39 truck tractors had aggregate adjusted bases of $93,101.78 as of December 31, 1958. In its income tax return for 1959, petitioner claimed a depreciation deduction of $57,704.99 on account of these 39 truck tractors. It reported long-term capital gain of $184,003.21 upon the disposition of these 39 truck tractors. No depreciation was claimed in 1959 on the remaining 105 truck tractors, they having been fully depreciated prior to 1959.

In the notice of deficiency, the respondent disallowed the claimed deduction of $57,704.99, but reduced the amount of capital gain reported upon the disposition of the 39 truck tractors with the following explanation:

Your adjusted bases at January 1, 1959, were less than the respective amounts realized by you on tractors sold or exchanged during the year 1959 from which you reported long-term capital gains in amounts totaling $578,803.21. Therefore, amounts totaling $57,704.99 deducted on your 1959 return as depreciation on the said tractors is disallowed under item (b) above since such amounts do not represent a reasonable allowance for depreciation within the meaning of section 167 of the Code. Accordingly, the net gain reported by you is reduced by $57,704.99.

In addition to the 144 truck tractors described above, petitioner in 1959 had other truck tractors, including 143 which had cost $1,622,892.99, which had been acquired principally in 1959.

For the taxable year 1959, petitioner claimed a depreciation deduction of $122,955.47 on these 143 truck tractors, using a salvage value of 10 percent of cost in computing its depreciation allowance.

In the notice of deficiency, respondent disallowed $13,421.74 of the depreciation claimed on these 143 truck tractors, determining that they had a salvage value of 20 percent of cost.

## OPINION

The respondent disallowed the full amount of depreciation claimed for the taxable year 1959 with respect to the 39 truck tractors which the petitioner disposed of in that year for an amount in excess of the aggregate adjusted bases of such truck tractors as of the beginning of that year. The petitioner contends that a taxpayer may not be deprived of a deduction for depreciation on assets in the year in which he sells them, for an amount in excess of adjusted bases, provided his depreciation is otherwise properly computed.

We agree with the petitioner that there is no rule of law which disallows claimed depreciation in the year of sale merely because the sales price exceeds the adjusted basis at the beginning of the year. *Macabe Co.*, 42 T.C. 1105; *C. L. Nichols*, 43 T.C. 135; and *United States* v. *S. & A. Co.*, (C.A. 8) 338 F. 2d 629. However, where respondent in the notice of deficiency disallows a depreciation deduction in the year of sale because the sales price exceeds the adjusted basis at the beginning of the year of sale, the petitioner has the burden of showing that the estimates used by him in his depreciation computation were correct. *C. L. Nichols, supra.* In that case we reiterated what was indicated in *Macabe Co., supra*, that the amount received upon the sale of property at or near the end of its estimated useful life (especially in the case of property with a short useful life) may be a relevant yardstick for purposes of determining salvage value.

In the instant case the petitioner in computing the claimed depreciation allowance on these truck tractors used an estimated salvage value of $100 per truck tractor, or a total of $3,900. It actually received upon the disposition thereof in the taxable year 1959 an aggregate

amount of $219,400. The petitioner has introduced no evidence to show that the estimates used by it in computing the claimed depreciation allowances were correct, and that the disparity between estimated salvage value and sales price was due to market appreciation. Under the circumstances, we must approve the respondent's disallowance of the depreciation claimed in 1959 on the 39 truck tractors disposed of in that year.

The respondent also disallowed $13,421.74 of depreciation claimed for the taxable year 1959 with respect to 143 other truck tractors by increasing the estimated salvage value thereof from 10 percent of cost, as claimed by the petitioner, to 20 percent of cost. Here again the burden of proof is upon the petitioner to show error in the respondent's determination. The only evidence introduced specifically directed toward this issue was the testimony of an officer of the American Trucking Associations and certain statistics presented by him. He testified that a few years ago such association made a survey of its members to ascertain the estimated useful life and estimated salvage value claimed by them on various types of equipment for purposes of computing depreciation for tax purposes. The statistics presented showed that for diesel tractors having an average haul of over 300 miles, 19 carriers reported that they had claimed salvage values of from zero to over 15 percent of cost (about one-half using 10 percent), and that the claimed depreciation had been allowed by the Internal Revenue Service. In the first place, such statistics do not purport to show the actual experience of the other carriers, but merely estimates used for tax purposes. The petitioner recognizes this, but contends that it shows the judgment of the industry. We think, however, that these statistics are not determinative here. We are primarily concerned with the petitioner's experience and the proper estimates in the light of such experience. The petitioner did not attempt to show by its own experience that its estimate of salvage value was correct. Such evidence as the record contains regarding the petitioner's experience with respect to other truck tractors tends to indicate that estimated salvage value would be far in excess of the 10 percent of cost claimed and, indeed, in excess of the 20 percent of cost which the respondent determined. Upon this issue, also, the respondent's determination is approved.

*Decision will be entered under Rule 50.*