*Decisions will be entered under Rule 50.*

ENGINEERS LIMITED PIPELINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3537-62. Filed May 28, 1965.

*Walter G. Schwartz*, for the petitioner.
*Leo A. McLaughlin*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax for the taxable year ended September 30, 1955, in the amount of $59,341.54.

The petitioner alleges that the Commissioner erred in disallowing depreciation claimed as a deduction in the amount of $109,509.95 in the fiscal year in question attributable to "Items of Equipment on Hand" at the end of that year and also erred in disallowing depreciation claimed in the same year in the amount of $7,586.51 attributable to "Items of Equipment Sold." Error is also alleged in that the Commissioner failed to allow proper depreciation on items sold at a loss in the taxable year.

## FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner is a corporation organized and existing under the laws of the State of California, with its principal office at 200 Bush Street, San Francisco, Calif. Petitioner filed its income tax return for the fiscal year ended September 30, 1955, with the district director of internal revenue at San Francisco, Calif., on an accrual, completed-contract method.

Petitioner was incorporated on or about September 29, 1947, to engage in the pipeline construction business as a successor to a partnership doing business as Pacific Pipeline Engineers.

At all times here material, petitioner has been engaged in pipeline construction work, principally on the west coast and in the middle-west sections of the United States. Its work has been extensive, requiring considerable amounts of construction equipment.

On its income tax return for its fiscal year ended September 30, 1955, petitioner claimed depreciation on items of equipment on hand at the end of that fiscal year in the amount of $429,784.76.

On its income tax return for its fiscal year ended September 30, 1955, petitioner claimed depreciation in the amount of $12,440.54 on items of equipment sold in that year.

During the period October 1, 1949, to September 30, 1955, the petitioner acquired for use in its business numerous pieces of construction equipment, trucks, and automobiles which it also sold during that period. A schedule of equipment sales for the fiscal years 1950–56, the date acquired, cost, depreciation to the date of sale, date of sale, and sales price are all included in stipulated joint Exhibit 15–0 which is included herein by this reference. (The exhibit is too extensive for reproduction here.)

In computing its depreciation deductions on such items for its taxable years ended September 30, 1948, through September 30, 1955, no amount was assigned as salvage value. In determining the deficiency herein the Commissioner established general salvage values for each separate class of petitioner's equipment; he accepted the useful lives for certain classes of equipment assigned by the petitioner and

adjusted the useful lives in the remaining classes. In general the following table indicates the adjustments made in useful lives.

| Class | Petitioner's life | Respondent's life |
|---|---|---|
| | Years | Years |
| Trenchers | 2–7 | 7 |
| Compressors | 2–7 | 6 |
| Concrete mixer | 4 | 5 |
| Truck, tractor, and trailer | 2–7 | 5 |
| Shovels (backhoes) | 6 | 4 |
| Crawler tractors | 2–7 | 7 |
| Semitrailers | 2–7 | 4 |
| Pickups | 2–4 | 4 |
| Trucks | 2–7 | 4 |
| Trailers, lowbed | 4–7 | 4 |
| Beveling machine | 4 | 6 |
| Cleaning and priming | 2–7 | 7 |
| Straightening machine | 2–4 | 5 |
| Bending machine | 4 | 5 |
| Buckets | 4 | 6 |
| Boring machines | 2–4 | 6 |

As reported on petitioner's returns, petitioner disposed of 702 pieces of equipment during its fiscal years 1950 through 1959 as follows:

| Fiscal year | Number of items sold | Gains (losses) | Fiscal year | Number of items sold | Gains (losses) |
|---|---|---|---|---|---|
| Sept. 30— | | | Sept. 30—Continued | | |
| 1950 | 42 | $30, 468. 74 | 1956 | 67 | $57, 140. 56 |
| 1951 | 54 | 34, 990. 67 | 1957 | 94 | 195, 357. 70 |
| 1952 | 46 | 33, 210. 92 | 1958 | 52 | 76, 102. 97 |
| 1953 | 43 | 62, 236. 76 | 1959 | 136 | 91, 851. 72 |
| 1954 | 105 | 55, 506. 14 | | | |
| 1955 | 63 | 41, 656. 62 | | 702 | 678, 522. 80 |

The above-described disposals were made in accordance with an established policy. The actual decision to sell a piece or a group of equipment was made by Roy Price, petitioner's vice president and general manager during the period January 1949 to June 1955, and its president from June 1955 to April 1959.

In deciding whether to sell any particular piece of equipment, Price took several factors into consideration. In so deciding, Price particularly considered the previous depreciation on said equipment and the remaining undepreciated cost. He testified that in making sales as in other activities he "had a policy of trying to make money anyway I could."

The actual sale or disposal of a piece of equipment was handled by Farris, the employee who was in charge of equipment buying or selling.

In attempting to sell a piece of equipment, Farris would contact other contractors or equipment dealers. At times, petitioner would prepare brochures describing a particular piece or group of equipment and circulate them among potential purchasers. Price would make the decision of whether to sell the equipment at a particular price.

Based upon petitioner's sales of its construction equipment during

the period October 1, 1949, to September 30, 1955, the following schedule indicates by class: (a) Petitioner's percentage of recovery of original cost of said equipment, and (b) salvage values established by respondent:

| Class | (a) Percentage of recovery of original costs from sales history | (b) Respondent's salvage value |
|---|---|---|
| | | (*Percent*) |
| Trenching machines | 57 | 25 |
| Automobiles | 54 | 25 |
| Compressors | 63 | 25 |
| Mechanical saw | 13 | 0 |
| Concrete mixer | 141 | 25 |
| Truck, tractor, and trailer | 38 | 20 |
| Light plants and generator | 27 | 25 |
| Water pumps | 74 | 25 |
| Roller | 61 | 25 |
| Sheepsfoot roller | 18 | 10 |
| Shovels (backhoes) | 53 | 25 |
| Steam cleaner | 40 | 25 |
| Tractors, crawler | 82 | 25 |
| Tractors, tired | 58 | 25 |
| Semitrailers | 85 | 30 |
| Pickups | 38 | 25 |
| Trucks | 29 | 25 |
| Welders | 44 | 25 |
| Cleaning and priming | 16 | 10 |
| Grinding and buffing | 100 | 10 |
| Pipe locater | 28 | 0 |
| Truck cranes | 40 | 25 |
| Buckets | 66 | 25 |
| Tar kettles | 16 | 10 |
| Boring machines | 64 | 25 |
| Lubrication machine | 10 | 10 |

The following schedule reflects petitioner's percentage of recovery of overall cost, by year, through its sales of construction equipment for each of its fiscal years 1950 through 1955, inclusive.

| FYE Sept. 30— | Cost | Amount realized | Recovery of overall cost |
|---|---|---|---|
| | | | (*Percent*) |
| 1950 | $89,695 | $59,964 | 67 |
| 1951 | 81,788 | 44,719 | 55 |
| 1952 | 83,760 | 42,504 | 51 |
| 1953 | 138,198 | 93,523 | 68 |
| 1954 | 196,486 | 90,487 | 46 |
| 1955 | 115,142 | 57,242 | 50 |

In its fiscal year ended September 30, 1955, petitioner sold 63 pieces of equipment; petitioner claimed depreciation in its return for that year on 34 pieces of this equipment. On 21 of these last-mentioned items, petitioner's claimed depreciation for fiscal year 1955, if allowed entirely, would result in an adjusted basis on each item less than the sales price received in fiscal year 1955. Or, differently stated, the 21 items were sold for prices in excess of their adjusted basis at the beginning of fiscal year 1955. Some of the remaining 13 items were sold for prices lower than their adjusted bases at the beginning of

fiscal year 1955 but in excess of the bases after offsetting the claimed depreciation for 1955, and others were sold for prices below their adjusted bases after offsetting the claimed depreciation for fiscal year 1955. If allowed, the total amount of the claimed fiscal year 1955 depreciation on these 21 items would reduce their aggregate bases below the total amount received by $7,586.51. In the deficiency notice the Commissioner established as salvage values for the above 34 items the amounts actually realized from the sale thereof in fiscal year 1955.

ULTIMATE FINDING

The petitioner has not shown error in the Commissioner's determination of the deficiency herein.

OPINION

The major portion of the deficiency here results from the action of the Commissioner in assigning salvage values to the pieces of petitioner's equipment. The smaller portion comes about from some changes which he made in useful lives.

The petitioner attacks the Commissioner's determination on the grounds that the depreciation methods established by the petitioner with the consent of the Commissioner in earlier years, which petitioner urges were in accordance with the regulations and rulings and the experience of the pipeline construction industry, should be followed. Further, the petitioner alleges that the Commissioner has made arbitrary and inconsistent adjustments to petitioner's depreciation methods which should not be permitted to stand.

We disagree with petitioner. The burden of showing error in the Commissioner's determination is on petitioner. We think the record as a whole more than sustains that determination.

The adjustments which have been made are based on the experience of petitioner over the years and on the particular circumstances of that experience. The fact is that petitioner had consistently disposed of large amounts of depreciable equipment during the period of its existence at prices which resulted in the return of sums representing a substantial percentage of its cost basis in the equipment. Yet petitioner computed its claimed depreciation without assigning any salvage values. In these circumstances it is permissible for the Commissioner to determine a reasonable salvage value and reduce the claimed depreciation accordingly. See *Massey Motors, Inc.* v. *United States*, 364 U.S. 92. The Commissioner certainly is not bound by his acquiescence in depreciation actions taken by petitioner in previous years based on adjustments suggested by internal revenue agents and followed by petitioner. If errors have been made in previous years they are not to be perpetuated in the taxable year involved. The Commis-

sioner has made no retroactive adjustments for previous years and we have only fiscal 1955 before us. See *Automobile Club of Michigan*, 353 U.S. 180, and *Dixon* v. *United States*, ——U.S. —— (May 3, 1965).

Petitioner also argues that while it did not take into account any salvage value on its books "as such," salvage values were actually taken "into account by the longer lives used, which contained a built in salvage value." We can make no such finding. We think the useful lives determined by the Commissioner were reasonably based on petitioner's experience as shown by the record and the salvage values determined by the Commissioner are also so based. There is some testimony as to industry experience in evidence, and while this is a factor that may be given consideration, it is the petitioner's own experience in its own business that is more important. *Massey Motors, Inc.* v. *United States, supra.*

It may be, as petitioner claims, that some part of the disposal price of its machinery was the result of inflation and scarcity values, but the Commissioner's determination, in our opinion, makes ample allowance for this factor (if such be required) and should not be disturbed. In most instances, except for some items disposed of in the taxable year, the salvage values used by the Commissioner were substantially less than the amounts subsequently realized from the sales.

With reference to the pieces of equipment sold by petitioner in 1955 it is the Commissioner's position that it is proper to take the actual sales price into consideration in determining the depreciation deduction for the year of disposition of the asset. This Court has recognized the propriety of such action. Both in *C. L. Nichols*, 43 T.C. 135, and *Bell Lines, Inc.*, 43 T.C. 358, we stated that "the amount received upon the sale of property at or near the end of its estimated useful life (especially in the case of property with a short useful life) may be a relevant yardstick for purposes of determining salvage value." This was also indicated in *McCabe Co.*, 42 T.C. 1105, 1115. These cases recognize that the burden is on the petitioner to overcome the presumptive correctness of the Commissioner's determination and there is some indication in the cases referred to that this can be done by showing that the estimates used by petitioner were correct and that the gain realized upon the sale resulted from market appreciation.

Petitioner has failed to carry his burden. In evidence there are Wholesale Price Indexes of Construction Machinery and Equipment for the years 1940 through 1959 published by the Bureau of Labor Statistics of the U.S. Department of Labor. These show a gradual increase in prices over the years of a few percentage points a year. And there was testimony of a general nature to the effect that there had been a gradual increase in the price of construction equipment over the period. We do not see how such testimony helps this peti-

tioner. It has little probative value with respect to the particular equipment involved here. The specific experience and history of the petitioner's depreciation policies with respect to its equipment do. Consistently over the years it was selling depreciated equipment for more than its depreciated basis. It assigned no salvage value in computing depreciation when its experience clearly showed there was salvage value. How much of the price received was due to "market appreciation" has, in our opinion, not been proved. In the circumstances we approve the Commissioner's use of the price received for equipment sold in fiscal 1955 as salvage.

The petitioner further contends that in any event 13 of the 34 items were sold in 1955 at a loss and that it should be allowed $1,567.12 depreciation for 1955 with respect to these items. At first blush it would appear that it would not matter if the deduction was attributed to a deduction of a loss on the sale or a deduction on account of depreciation. But in the matter of the 13 items the Commissioner did allow the claimed depreciation for the 1955 period for which these assets were held. What the petitioner is seeking is an additional and further depreciation deduction measured by the amount of the $1,567.12 loss on the 13 items. This apparently is on the theory that under the above conclusion that the petitioner is not entitled to any deduction for depreciation when the asset is sold for more than its depreciated base, when it is sold for less than such basis, equity requires that the further depreciation deduction should be granted. Such cannot be the case. With respect to a loss resulting from a sale under such circumstances, we are no longer concerned with the deduction of depreciation or its reasonableness, by reason of the sale price, but only with the amount of the loss on the sale. Here, as we have stated, the depreciation as claimed by the petitioner for the year of the sale already has been allowed by the Commissioner. As the Commissioner suggests, the 13 items in question are section 1231 assets, the loss on which must be considered with the gains on the other 21 items to arrive at the amount of gains from the sale of these capital assets. To do as the petitioner urges would be more difficult than mixing oil and water.

The Commissioner has conceded a number of errors in the computation which can be corrected under Rule 50.

*Decision will be entered under Rule 50.*