CATHERINE F. DINKINS, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3450–62—3454–62, 4693–62—4697–62, 958–63, Filed March 30, 1966. 3998–63.

*Don O. Russell* and *William A. Ens,* for the petitioners.
*Glenn L. Strong* and *Gerald S. Walsh,* for the respondent.

MULRONEY, *Judge:* Respondent determined the following deficiencies in income tax:

| Docket No. | Petitioner | Year | Income tax deficiency |
|---|---|---|---|
| 3450–62 | Catherine F. Dinkins | 1958 | $499.66 |
| | | 1959 | 3,607.65 |
| 4693–62 | Catherine F. Dinkins | 1960 | 8,287.23 |
| 3451–62 | Agnes Fabick | 1958 | 119.02 |
| | | 1959 | 4,517.11 |
| 4694–62 | Agnes Fabick | 1960 | 10,695.85 |
| 3452–62 | Francis J. Fabick and Mildred Fabick | 1958 | 10,982.26 |
| | | 1959 | 14,580.00 |
| 4695–62 | Francis J. Fabick and Mildred Fabick | 1960 | 17,306.13 |
| 3453–62 | John Fabick and Elaine Fabick | 1958 | 12,027.26 |
| | | 1959 | 17,992.89 |
| 4696–62 | John Fabick and Elaine Fabick | 1960 | 20,668.02 |
| 3454–62 | Joseph G. Fabick and Gloria Fabick | 1958 | 1,007.98 |
| | | 1959 | 11,602.19 |
| 4697–62 | Joseph G. Fabick and Gloria Fabick | 1960 | 9,931.64 |
| 958–63 | Gilbert E. McNeill and Loretta F. McNeill | 1958 | 400.70 |
| | | 1959 | 3,461.83 |
| 3998–63 | Gilbert E. McNeill and Loretta F. McNeill | 1960 | 8,297.39 |

The issues are (1) whether Rental Equipment Co. used the proper useful lives and salvage values for its numerous units of equipment in determining a reasonable allowance for depreciation of such equipment during the years here involved, and (2) the amount of depreciation allowable on a unit of equipment in the year that unit was sold.

---

[1] The following proceedings are consolidated herewith: Agnes Fabick, an Individual, docket No. 3451–62; Francis J. Fabick and Mildred Fabick, docket Nos. 3452–62 and 4695–62; John Fabick and Elaine Fabick, docket Nos. 3453–62 and 4696–62; Joseph G. Fabick and Gloria Fabick, docket Nos. 3454–62 and 4697–62; Catherine Dinkins, docket No. 4693–62; Agnes Fabick, docket No. 4694–62; and Gilbert E. McNeill and Loretta F. McNeill, docket Nos. 958–63 and 3998–63.

FINDINGS OF FACT

Some of the facts were stipulated and they are so found.

Thomas A. and Catherine F. Dinkins, husband and wife, are residents of St. Louis, Mo. They filed joint Federal income tax returns for 1958, 1959, and 1960 with the district director of internal revenue, St. Louis, Mo. Thomas A. Dinkins is not a party to these proceedings. Agnes Fabick is a resident of St. Louis, Mo., and she filed her individual Federal income tax returns for 1958, 1959, and 1960 with the district director of internal revenue, St. Louis, Mo. Francis J. and Mildred Fabick, husband and wife, are residents of Clayton, Mo., and they filed their joint Federal income tax returns for 1958, 1959, and 1960 with the district director of internal revenue, St. Louis, Mo. John and Elaine Fabick, husband and wife, are residents of Fenton, Mo., and they filed their joint Federal income tax returns for 1958, 1959, and 1960 with the district director of internal revenue, St. Louis, Mo. Joseph G. and Gloria Fabick, husband and wife, are residents of St. Louis, Mo., and they filed their joint Federal income tax returns for 1958, 1959, and 1960 with the district director of internal revenue, St. Louis, Mo. Gilbert E. and Loretta F. McNeill, husband and wife, are residents of Lake Charles, La., and they filed their joint Federal income tax returns for 1958, 1959, and 1960 with the district director of internal revenue, New Orleans, La.

Rental Equipment Co., hereinafter called Rental, is a corporation which was organized on May 1, 1945, under the laws of the State of Missouri as the Equipment Rental Co., which name was subsequently changed to Rental Equipment Co. Rental's principal place of business is located in St. Louis, Mo. Rental keeps its books and records and files its Federal income tax returns on an accrual method of accounting with a fiscal year ending January 31. Since its incorporation, Rental had 3,234 shares of stock outstanding, with 462 shares held by each of the following persons: Catherine F. Dinkins, Agnes Fabick, Francis J. Fabick, John Fabick, Joseph G. Fabick, Loretta F. McNeill, and Maurice L. Fabick. With the exception of Maurice L. Fabick, all of the stockholders in Rental are petitioners in the cases before us.

During the years in issue the officers of Rental were as follows: John Fabick, president; Francis J. Fabick, vice president and secretary; William F. Schroer, treasurer; Edward F. Kreutz, assistant treasurer; and V. E. Gruenenfelder, assistant secretary.

The seven stockholders of Rental are also controlling stockholders of the John Fabick Tractor Co., which in turn owns all of the stock of four subsidiary corporations. The John Fabick Tractor Co. is principally engaged in the business of selling new Caterpillar equipment and used equipment, as well as selling parts and servicing equipment.

Pursuant to section 1372 of the Internal Revenue Code of 1954,[2] Rental, a small business corporation as defined by section 1371, elected on November 29, 1958, with the unanimous consent of its stockholders, to be taxed as a subchapter S corporation. Rental filed a U.S. Small Business Corporation Return of Income (Form 1120-S) for each of its taxable years ended January 31, 1959 through 1961, with the district director of internal revenue, St. Louis, Mo.

With the exception of the construction equipment it acquired at the time of its incorporation in 1945, Rental acquired most of its construction equipment during the taxable years ended January 31, 1959 through 1961, and at all times previous thereto, from the John Fabick Tractor Co. After the various types of construction equipment were used by Rental in its business, such equipment, with few exceptions, was sold to John Fabick Tractor Co. or one of its subsidiary corporations. Thereafter the John Fabick Tractor Co., or one of its subsidiaries, sold such construction equipment to third parties.

Rental's facilities consist of approximately 2½ acres of land with improvements which consist of a frame office building, a corrugated metal shop building, a loading dock for heavy equipment, a railroad siding, and an equipment storage yard. Since its incorporation, one of Rental's principal business activities has been the leasing and renting of construction equipment, including tractors, traxcavators, motor graders, scrapers, bulldozers, angledozers, cranes, compressors, rollers, buckets, and smaller miscellaneous units. The equipment was leased or rented primarily to contractors and to industrial plants. Rental maintained an average of 50 major units of equipment, such as tractors, cranes, and air compressors.

The equipment rentals were on a daily, weekly, or monthly basis, with no recapture provisions or purchase options. Operators for the rented equipment were furnished by the customers, who were also expected to supply such preventive maintenance as adjusting clutches, oiling and greasing, and other necessary adjustments. Since the rental equipment business was highly competitive, it was necessary for Rental to make constant repairs on its equipment between rentals in order to keep it in demand. Rental's employees repaired and maintained the equipment not only in its own shop but also on the jobsites.

Generally, it was necessary in the rental equipment business to have the more modern types of equipment available, and it would also be necessary to keep available the kind of equipment currently in demand. By 1958 the Caterpillar Tractor Co. had introduced a torque converter (a semiautomatic shift mechanism) on its equipment and in the latter

---

[2] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

part of 1959 introduced a power shift, which was a fully automatic transmission, on its equipment. Rental acquired these new models of Caterpillar equipment to replace the older models.

In computing the depreciation deductions on its construction equipment for the taxable years ended January 31, 1959 through 1961, Rental applied a salvage value of 12½ percent on all of its construction equipment, except buckets and smaller miscellaneous units, and used useful lives of 6 years on its various items of machinery (tractors, traxcavators, motor graders, scrapers, bulldozers, angledozers, cranes, and rollers), 8 years on its compressors, and 3 or 4 years on its buckets and smaller units. In its taxable year ended January 31, 1959, and for several taxable years prior thereto, Rental used the double declining balance method for computing depreciation on its rental equipment until the adjusted basis of the particular asset was reduced to approximately 50 percent of cost. After 50 percent of the asset was recovered through depreciation, Rental used the straight-line method of computing depreciation. For its taxable years ended January 31, 1960 and 1961, Rental used the straight-line method of computing depreciation on its construction equipment with the exception of two specific assets which were depreciated on the double declining balance method.

Rental claimed deductions for depreciation on construction equipment in its returns of income for the taxable years ended January 31, 1959 through 1961, in the amounts of $219,345.06, $177,984.69, and $157,811.58, respectively.

Rental's returns for the taxable years ended January 31, 1953 through 1961, show equipment sales as follows:

| Taxable year ended Jan. 31— | Total selling price | Cost of equipment sold | Percentage of selling price to cost |
|---|---|---|---|
| 1953 | $55,932.00 | $58,257.18 | 96 |
| 1954 | 132,615.96 | 157,391.36 | 84 |
| 1955 | 453,591.05 | 613,736.08 | 74 |
| 1956 | 225,042.91 | 292,504.55 | 77 |
| 1957 | 127,333.28 | 162,913.92 | 78 |
| 1958 | 191,095.00 | 202,165.58 | 95 |
| 1959 | [1] 125,954.20 | [1] 194,444.54 | 65 |
| 1960 | 133,109.16 | 174,048.39 | 76 |
| 1961 | [2] 286,775.00 | [2] 437,940.79 | 65 |

[1] Automobile, which was sold for $1,150, omitted.
[2] Truck, which was sold for $300, omitted.

Rental's returns for the taxable years ended January 31, 1959, 1960, and 1961, show capital gains realized from the sales of equipment in the respective amounts of $49,704.95, $34,662.39, and $105,165.43.

Rental reported receipts from rentals and other sources in the taxable years ended January 31, 1959 through 1961, in the amounts of $404,208.03, $412,184.31, and $276,923.38. Rental's returns of income for the taxable years ended January 31, 1959 through 1961, show tax-

able income in the respective amounts of $23,702.17, $24,835.09, and $21,767.07. No portion of this taxable income represented ordinary income.

Respondent, in the statutory notices of deficiency, determined that Rental's allowance for depreciation for each of the taxable years ended January 31, 1959 through 1961, should take into consideration a salvage value of 60 percent of cost of the various types of construction equipment, or the undepreciated cost at February 1, 1958, whichever was lesser. Respondent also determined that the useful life in Rental's trade or business for the various types of construction equipment was as follows: 5 years for tractors, traxcavators, motor graders, scrapers, bulldozers, angledozers, cranes, and rollers; 7 years for compressors; and 3 years for buckets and miscellaneous smaller units. Respondent further adjusted Rental's claimed deduction for depreciation in the year a particular unit of equipment was sold to eliminate any depreciation deduction which would reduce the adjusted basis of said unit to an amount below selling price.

Respondent's disallowances of depreciation deductions claimed by Rental may be summarized as follows:

| Taxable year ended Jan. 31— | Depreciation allowed | Depreciation disallowed due to revision of salvage value or useful life | Depreciation disallowed in year equipment was sold | Total depreciation disallowed |
|---|---|---|---|---|
| 1959 | $152,242.37 | $62,671.61 | $4,431.16 | $67,102.77 |
| 1960 | 51,768.47 | 122,448.59 | 3,767.69 | 126,216.28 |
| 1961 | [1] 48,234.16 | 104,057.12 | 5,520.50 | [1] 109,577.62 |

[1] Additional depreciation in the amount of $132.13 was allowed on nonrental assets.

Since under the statutory scheme both the distributed and undistributed taxable income (as defined in sec. 1373) of a subchapter S corporation is included in the gross income of the stockholders, the various adjustments made by respondent to Rental's taxable income also caused adjustments to be made in the income of the stockholder-petitioners for the years 1958, 1959, and 1960.

### OPINION

The first issue is whether respondent correctly determined the useful lives and salvage values of the construction equipment used by Rental in its leasing business. Most of the depreciation disallowed by respondent in the taxable years ended January 31, 1959, 1960, and 1961, is due to the revisions made by respondent in the salvage values and useful lives of the equipment. The remainder of the depreciation disallowance results from respondent's determination that, in the years when equipment was sold, no depreciation was allowable which would reduce the adjusted basis of the equipment to an amount below selling price.

A meaningful computation of the depreciation allowance under section 167 requires an accurate estimate of both the useful life of the depreciable asset and its salvage value at the end of such useful life. In *Fribourg Navigation Co.* v. *Commissioner*, 383 U.S. 272, the Supreme Court noted that "It is, of course, undisputed that the Commissioner may require redetermination of useful life or salvage value when it becomes apparent that either of these factors has been miscalculated." In *Massey Motors* v. *United States*, 364 U.S. 92, the Supreme Court held that, for depreciation purposes, the useful life of the asset must be "related to the period for which it may reasonably be expected to be employed in the taxpayer's business" and that "salvage value must include estimated resale or second-hand value."

It is abundantly clear from the testimony of petitioners' witnesses, as well as from the arguments made in petitioners' opening brief, that Rental's estimates of the useful lives of its numerous items of construction equipment were based on the economic or physical life of the equipment, with no apparent attempt to relate such estimates to the actual duration of use of such equipment in Rental's business. In *their reply brief petitioners now accept respondent's determination* that the useful life of Rental's "heavy construction equipment" was 5 years and, for compressors, 7 years. On the basis of the concession by petitioners, and in view of the absence in the record of any evidence to show the incorrectness of respondent's determinations of useful life as to any of the categories of construction equipment, we sustain respondent's determinations that the useful life in Rental's business was 5 years for tractors, traxcavators, motor graders, scrapers, bulldozers, angledozers, cranes, and rollers; 7 years for compressors; and 3 years for buckets and miscellaneous smaller units.

After accepting respondent's determinations on the useful lives of the equipment as noted above, petitioners then continued on brief as follows: "It follows that the decrease in life in accordance with such determination would be reflected in direct proportion by an increase in salvage value. Using an appropriate mathematical formula, this would result in a salvage value equal to fifteen per cent * * * of the original cost." Petitioners argue that this salvage value is substantiated by the testimony of H. D. Anderson (who had been in the heavy construction business for many years as a distributor and who also had handled rental equipment) that if a tractor is worked down to the point of falling apart the salvage value would be junk value of 7 or 8 percent, but if the equipment is in workable condition, but no longer profitable as a rental unit, then a proper salvage value would be in the range of from 15 to 20 percent.

We need not dwell on the shortcomings of these contentions. It would appear that petitioners are still ignoring the explicit holding of the *Massey* case that salvage value, for depreciation purposes, must

include resale value or second-hand value at the end of the useful life of the asset in taxpayer's business. Salvage value is not some abstract concept which, as petitioners seem to indicate, can be mathematically determined without any reference to Rental's actual experience. Nor can petitioners ignore Rental's own experience and practice over the years and base the salvage value of its construction equipment on the experience of someone else who happens to be in a similar line of business. As we stated in *Engineers Limited Pipeline Co.*, 44 T.C. 226, 231, although industry experience is a factor to be considered, "it is the petitioner's own experience in its own business that is more important." See also *Massey Motors* v. *United States, supra.*

Since its incorporation in 1945, Rental has consistently sold much of its construction equipment for amounts which represented a large percentage of its cost basis in the equipment and, at times, for amounts in excess of such cost basis. A schedule showing the approximately 195 pieces of equipment sold by Rental through its taxable year ended January 31, 1958, indicates that, in most instances, the percentage of selling price to the cost of the equipment exceeded by a comfortable margin the 60-percent salvage value figure determined by respondent.[3] Rental's returns show that the percentages of selling price to cost of the equipment sold in each of the taxable years ended January 31, 1953 through 1958, range from 74 to 96 percent. Rental sold about 85 pieces of construction equipment during the taxable years ending January 31, 1959 through 1961. Rental's returns for the taxable years ended January 31, 1959 through 1961, show that the percentages of the selling price to cost of the equipment sold during this period were 65 percent, 76 percent, and 65 percent, respectively. In other words, Rental's own experience over the years amply supports the respondent's determination that an accurate salvage value for Rental's construction equipment, for the purpose of computing a meaningful allowance for the depreciation of such equipment over the period here relevant, was 60 percent of the cost of the various types of such equipment.[4] We sustain the respondent on this issue.

The next issue is whether, in a fiscal year in which a unit of equipment was sold by Rental, the depreciation deduction for that unit should be limited to that amount (if any) by which Rental's ad-

---

[3] The schedule clearly reveals the utter unreality of the 12½-percent salvage value figure used by Rental. Out of the approximately 195 pieces of equipment sold by Rental through its fiscal year ended Jan. 31, 1958, only about five units were sold at a price less than 35 percent of the original cost.

[4] In *Commissioner* v. *Evans,* 364 U.S. 92 (decided together with the *Massey Motors* case), the issue involved the useful lives and salvage values of automobiles used in a car rental business. Cars used in the short-term rental phase of the business were sold after being used for about 15 months. It appears that in 1950 the average cost of the cars sold in that year was $1,650 and they were sold for an average sales price of $1,380. The Tax Court (reversed by the Court of Appeals for the Ninth Circuit in 264 F. 2d 502, which was in turn reversed by the Supreme Court) found that the cars in question had a useful life of 15 months and a salvage value of $1,375, or over 80 percent of cost.

justed basis at the beginning of the fiscal year exceeded the sale price of the unit.[5] In *Fribourg Navigation Co.* v. *Commissioner, supra*, the Supreme Court held that depreciation could be taken on a depreciable asset in the year of profitable sale of that asset and rejected respondent's position that the deduction for depreciation in the year of sale of a depreciable asset is limited to the amount by which the adjusted basis of the asset at the beginning of the year exceeds the amount realized from the sale. The Supreme Court's holding in the *Fribourg* case is dispositive of the issue before us. We sustain the petitioners on this issue.

*Decisions will be entered under Rule 50.*

[5] The depreciation deductions disallowed under this issue are as follows:

