Durfee's, Inc., a West Virginia Corporation v. Commissioner.
Durfee's, Inc. v. Commissioner
Docket No. 5376-63.
United States Tax Court
T.C. Memo 1966-111; 1966 Tax Ct. Memo LEXIS 171; 25 T.C.M. (CCH) 588; T.C.M. (RIA) 66111; May 26, 1966
*171 Held, that the petitioner has established its right to deduct depreciation with respect to some of its depreciable assets sold in the taxable year, but not with respect to others, since the salvage value thereof was not shown. William G. Wilson, for petitioner. Rodney G. Haworth, for respondent. ATKINS
Memorandum Findings of Fact and Opinion *172 ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1961 in the amount of $7,972,52. The issue is whether the petitioner is entitled to a deduction for depreciation with respect to depreciable assets which it sold during the taxable year. Findings of Fact Some of the facts have been stipulated and the stipulations are incorporated herein by this reference. The petitioner is a West Virginia corporation with its principal office at Man, West Virginia. Its Federal income tax return for the taxable year 1961 was filed with the district director of internal revenue at Parkersburg, West Virginia. The petitioner was formed in 1951 by Charles O. Erickson, Daniel D. Dahill, and Charles Durfee. Erickson was its president and general manager. The petitioner owned and operated two community antenna television systems in Logan County, West Virginia, which furnished television reception service by coaxial cable to over 4,000 subscribers in and about Logan, Man, Holly, Amersdale, Lorado, and Mallory, West Virginia. The equipment used in such systems included "headend" equipment which received television signals, electronic equipment which amplified *173 the signals, coaxial cables and wires suspended on utility poles owned by telephone and power companies, and cables to the homes of the subscribers. By agreement dated March 28, 1961, the petitioner agreed to sell to National Community Antenna Television Systems, Inc., for $570,000 (which apparently was a net figure after payment of sales commissions of $30,000) the two community antenna television systems in Logan County. Attached to such contract was an exhibit describing by categories, some of which are detailed, the various assets to be transferred. These categories consisted of spare equipment; trucks; test equipment; office equipment; cable and hardware; 156 miles of completed cable system and all equipment necessary to operate the two antenna television systems; all the petitioner's interest in subscribers' contracts (of which there were at least 4,300); all accounts receivable; all of petitioner's interests in various leases; all of petitioner's interests in various agreements and contracts, including its contracts with telephone and electric power companies; and all of petitioner's rights in all tangible and intangible property which petitioner used or had the right to use *174 in the operation of the community antenna television systems. Therein it was provided that the petitioner and each of its directors and stockholders, individually, would enter into an agreement not to engage, for a period of five years, in any way in the operation of any community antenna television system within a 50-mile radius of Man or Logan, West Virginia. In the contract the selling price was not allocated among the various tangible and intangible assets sold. The sale was effected on July 1, 1961. At the time of the sale the petitioner had franchises which had been granted to it by three towns to operate community antenna television systems, and the petitioner transferred its interests therein to National Community Antenna Television Systems, Inc. At the time of the sale the systems, in their then condition, had a remaining useful life of between one and two years. The 156 miles of cable system consisted principally of trunk line wires, front line cable, feeder line cable, 60 trunk line amplifiers, 115 bridging amplifiers, 60 strip amplifiers, 34 line extenders (amplifiers), some galvanized steel wire used to support the cable, and some antennas to receive television signals *175 for amplification. The petitioner was dissolved by order of the Secretary of the State of West Virginia on June 14, 1962, pursuant to a petition for voluntary dissolution. Dissolution was made pursuant to section 337 of the Internal Revenue Code of 1954, according to a plan adopted on March 23, 1961. Although dissolved, petitioner is authorized to maintain this appeal and petition under West Virginia Code, Chapter 31, Article 1, Section 83 (Michie's section 3095) in accordance with the action taken by petitioner's board of directors on November 18, 1963. In its income tax return for the taxable year 1961 the petitioner claimed a deduction for depreciation computed under a method consistent with that employed by it during the taxable years 1956, 1957, 1958, and 1960. The unrecovered cost of depreciable assets sold by petitioner to National Community Antenna Television Systems, Inc., at the date of sale, was $78,346.05, [1] and the depreciation claimed for 1961 was $15,331.77. Such assets were set forth in the depreciation schedule in three categories. *176 The first category consisted of tools and equipment and office equipment which had been acquired at various times up to 1960 at a cost of $11,323.64, which had a depreciated cost of $3,925.57 [2] and with respect to which depreciation was claimed for 1961 in the amount of $315.56. In computing the depreciation deductions over the years the petitioner used rates of 10% and 20% and an estimated salvage value of $802.45. With respect to some of the assets no salvage value was used and with respect to some the original cost had been fully depreciated as of the beginning of the year 1961. The second category consisted of trucks and automobiles which had been acquired over the years 1955 to 1960 at a cost of $12,242.40, which had a depreciated cost of $4,054.43 and with respect to which depreciation was claimed for 1961 in the amount of $934.96. In computing the depreciation deductions over the years the petitioner used rates of 25% and 33 1/3% and an estimated salvage value *177 of $300. With respect to 7 of the 10 items in this category, the petitioner used no salvage value. Seven of the ten items had been fully depreciated as of the beginning of 1961. The third category was "Television System," consisting of various undescribed assets acquired at various times up to 1961 at a cost of $289,540.33, which had a depreciated cost of $70,366.05 and with respect to which depreciation was claimed for 1961 in the amount of $14,081.25. In computing the depreciation deductions over the years the petitioner used various rates, generally 20%, but did not use any estimated salvage value. A reasonable estimate of the salvage value of the assets constituting the television systems at the end of their useful lives is $10,000. The petitioner's income tax returns were audited by an agent of the Internal Revenue Service for the taxable years 1956, 1957, 1958, 1960, and 1961. All of the depreciation schedules and depreciation deductions were accepted except as to the year 1961. In the notice of deficiency, issued September 9, 1963, the respondent disallowed the deduction for depreciation claimed for 1961 in the amount of $15,331.77, stating: No depreciation is allowable *178 on an asset which is sold during the taxable year at a gain that is in excess of the depreciation claimed. (Rev. Rul. 62-92). Opinion In the notice of deficiency and on brief the respondent took the position that the amount which the petitioner received upon the sale in 1961 of its depreciable assets was in excess of the adjusted basis thereof as of January 1, 1961, and that consequently, as a matter of law, the petitioner is not entitled to any depreciation with respect thereto for 1961, relying upon Rev. Rul. 62-92, 1962-1 C.B. 29. In the recent case of Fribourg Navigation Co., Inc. v. Commissioner, 383 U.S. 272, the Supreme Court held that there is no such rule of law. Indeed, we also so held in Macabe Co., 42 T.C. 1105. However, in cases arising subsequent to the Macabe case we held that, nevertheless, the holding that depreciation cannot be disallowed as a matter of law solely because the sales proceeds exceed the adjusted basis of the asset as of the beginning of the year does not detract from the presumptive correctness of respondent's disallowance of a deduction for depreciation. In C. L. Nichols, 43 T.C. 135, *179 we stated: Despite the fact that we cannot sustain respondent as a matter of law, the determination made in his statutory notice of deficiency is presumptively correct. As we indicated in Macabe Co., supra, at 1115, the amount received upon the sale of property at or near the end of its estimated useful life (especially in the case of property with a short useful life) may be a relevant yardstick for purposes of determining salvage value. Thus, where respondent, pursuant to a statutory notice of deficiency, disallows a depreciation deduction in the year of sale because the sales price exceeds the estimate of salvage value, respondent has made a prima facie case that excessive depreciation has been claimed and that no depreciation is allowable in the year of sale. At that point, petitioner, in order to establish that he is entitled to some or all of the depreciation claimed, must show that estimates used by him in his depreciation schedule were correct and that the gain realized on the sale resulted from market appreciation. Our holding that depreciation cannot be disallowed as a matter of law solely because the sales proceeds exceed the adjusted basis of the asset as *180 of the beginning of the year does not detract from the presumptive correctness of respondent's disallowance of depreciation. This is not a situation where respondent's determination loses its presumption of correctness because it was arbitrarily made or is plainly wrong. Cf. Helvering v. Taylor, 293 U.S. 507 (1935); and Welch v. Commissioner, 297 F. 2d 309 (C.A. 4, 1961), reversing a Memorandum Opinion of this Court. The instant case involves a situation where petitioner is claiming a deduction. The burden is therefore on petitioner not only to show that the respondent's determination was incorrect but also to establish the amount of the deduction claimed. Burnet v. Houston, 283 U.S. 223 (1931). To the extent petitioner can establish that he is entitled to the deduction claimed, we will allow such deduction. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). To the extent petitioner cannot demonstrate that he is entitled to the depreciation claimed, we must sustain respondent's determination. See also Bell Lines, Inc., 43 T.C. 358, and Engineers Limited Pipeline Co., 44 T.C. 226. We find nothing in *181 the opinion in the Fribourg case at variance with the position taken in our Nichols case. In the Fribourg case it was pointed out that the original estimates as to the useful life and the salvage value of the assets were admittedly reasonable. In the instant case the respondent, in effect, concedes correctness of the petitioner's original estimates of useful life of the assets. However, he does contend that the petitioner's estimate of salvage value was unreasonable, pointing out that the petitioner used an estimated salvage value of only $1,102.45 for depreciable assets which had cost $313,106.37. He contends that all of the selling price of the two television systems should be allocated to the depreciable assets since no allocation was made in the contract of sale among the various tangible and intangible assets sold and because the petitioner has not met its burden of proving any different allocation. He further contends that such sale was made at or near the end of the useful lives of such assets and therefore establishes the salvage value thereof. The petitioner contends that since the respondent does not contest the estimated useful life used by it in its depreciation schedule *182 a redetermination of salvage value is not warranted. We think the petitioner clearly is in error in this contention. As pointed out by the Supreme Court in the Fribourg case, the respondent may require a redetermination of useful life or salvage value when it becomes apparent that either of these factors has been miscalculated. The petitioner further contends, in effect, that it has established that the fair market value of the tangible personalty sold (with the exception of test equipment) did not exceed $13,210.55; that to that extent the lump sum selling price should be allocated to the tangible personalty, the remainder of the selling price being allocable to intangible assets; that since the depreciable tangible assets had an unrecovered cost at the date of the sale of $78,346.05, it follows that the depreciation claimed for 1961 plus the depreciation allowed in prior years would not result in depreciating such assets below their salvage value or market value; and that hence depreciation with respect thereto is allowable for 1961, citing Kimball Gas Products Co. v. United States, (W.D. Tex.) F. Supp. , affirmed per curiam (C.A. 5) 358 F. 2d 133. The petitioner's *183 claimed market value of $13,210.55 purportedly covers both depreciable and non-depreciable tangible personal property sold. We are here concerned, of course, with only the depreciable assets, and specifically with the salvage value thereof. Among the tangible personal property sold, it seems clear that the categories of spare equipment and cable and hardware were not subject to depreciation in the hands of the petitioner since they consisted of new equipment not in use. Thus the depreciable tangible property sold with which we are here concerned was described in the contract of sale as trucks, test equipment, office equipment, and 156 miles of completed cable system and all equipment necessary to operate the two antenna television systems. The depreciable assets are set forth in the tax return for 1961 in three categories, namely, tools and equipment and office equipment, trucks and automobiles, and "Television System." The largest category of depreciable property is the last named, consisting of assets which had cost $289,540.33, which had an unrecovered cost as of the date of sale of $70,366.05, and with respect to which depreciation was claimed for 1961 in the amount of $14,081.25. *184 In computing depreciation on this category of assets over the years, including the taxable year in question, the petitioner did not take into account any salvage value. This category corresponds to the category described in the contract of sale as 156 miles of completed cable system and all equipment necessary to operate the two antenna television systems. The evidence shows that this 156 miles of completed cable system consisted principally of various types of wire and cable, galvanized steel wire used to suspend the cable, various types of amplifiers, and some antennas. The petitioner introduced the testimony of Charles O. Erickson, its president, Joe T. Fish, a dealer in scrap metals, and M. William Adler, a community antenna television consultant. Erickson testified that there was little or no market or demand for used community antenna television equipment. Adler also so testified that this was due to rapid obsolescence. However, Adler, in effect, testified to market values at the date of the sale of about $25 for each of the 60 trunk line amplifiers, about $15 for each of the 115 bridging amplifiers, about $50 for each of the 60 strip amplifiers, and about $20 for each of the *185 34 line extenders, or a total market value of $6,905 for amplifiers. He further testified that this equipment, at the time of the sale, had an additional year or two of physical life and useful life as part of the systems. Fish testified that the wire in the television systems would have no salvage value due to the fact that it was on poles and not on the ground, and that it would be difficult to recover the copper contained therein because the wire was so fine and the insulation so heavy. We are satisfied that the television wire would have no salvage value at the end of its useful life. We also consider it reasonable to conclude that the amplifiers would not have a salvage value at the end of their useful lives in excess of the total market value of $6,905 to which Adler testified. There was no direct testimony as to market value or salvage value of antennas or galvanized steel wire contained in the systems. However, in view of the testimony of Erickson and Adler that there was little or no market or demand for used television system equipment, we think it reasonable to conclude that the fair market value of these assets, and the salvage value thereof, was not substantial. We therefore *186 believe that the salvage value of the television systems was far less than the unrecovered cost thereof, and that the petitioner should, in all fairness, be entitled to some allowance for depreciation with respect thereto in the year in question. Accordingly, we consider it incumbent upon us to exercise our best judgment and find the reasonable amount of salvage value to be used in the calculation of the allowable depreciation deduction under section 1.167(a)-1(c) of the Income Tax Regulations. See Cohan v. Commissioner, 39 F. 2d 540. This we have done, bearing heavily against the petitioner which has the burden of proof, and have concluded and found as a fact that a reasonable estimate of the salvage value of the assets constituting the television systems is $10,000. It should be added that irrespective of how much of the selling price is properly allocable to the depreciable assets, we think the sale does not establish the salvage value thereof. Such assets were not sold separately but as a part of operating systems which, in their then condition, had a remaining useful life of from one to two years. There was no evidence whatsoever presented *187 by the petitioner with respect to the fair market value or salvage value of tools and equipment and office equipment which had a cost of $11,323.64, which had an unrecovered cost of $3,925.57, and with respect to which depreciation was claimed for 1961 in the amount of $315.56. Under the circumstances, we must approve the respondent's disallowance of the depreciation claimed with respect thereto. The remaining category of depreciable assets is automobiles and trucks which had a cost of $12,242.40, which had an unrecovered cost of $4,054.43, and with respect to which depreciation was claimed for 1961 in the amount of $934.96. The only evidence adduced with respect to this category was the testimony of Erickson that the fair market value of the trucks was equal to their book value of $3,119.47. There was no evidence with respect to the salvage value of the trucks, or the fair market value or salvage value of the automobiles included in this category. Thus the petitioner has failed to meet its burden of establishing the salvage value of the items making up this category, and the respondent's disallowance of depreciation claimed with respect thereto for 1961 is approved. Decision will *188 be entered under Rule 50. Footnotes
1. The unrecovered cost of depreciable assets at the date of sale is computed as follows: ↩
Adjusted book value at beginning
of 1961
$73,014.70
Less cost of assets not sold
374.28
$72,640.42
Plus the cost of depreciable assets
acquired in 1961
5,705.63
Unrecovered cost at date of sale
$78,346.05
2. The figure $11,323.64 includes the undisclosed cost of some office equipment which was not sold but was distributed to stockholders. The figure $3,925.57 is the correct depreciated cost of the assets sold.↩