JOHN M. EGAN, M.D., P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN M. EGAN and MARY B. EGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
John M. Egan, M.D., P.C. v. Commissioner
Docket Nos. 1224-81, 1225-81.
United States Tax Court
T.C. Memo 1982-237; 1982 Tax Ct. Memo LEXIS 507; 43 T.C.M. (CCH) 1284; T.C.M. (RIA) 82237; May 3, 1982. Paul "L" Roy O'Connor, for the petitioners. David M. Kirsch, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Petitioner
Year
Deficiency
John M. Egan [1]
1977
$ 1,205
1978
1,235
John M. Egan, M.D., P.C.
FYE 9/30/77 [2]
539
FYE 9/30/78
598
*508 At issue is the individual petitioner's percentage personal use of a car owned by the corporate petitioner and the salvage value of that car. These cases are consolidated for trial, briefing, and opinion. GENERAL FINDINGS OF FACT Some facts are stipulated and found accordingly. When their respective petitions were filed herein, John M. Egan's residence and John M. Egan, M.D., P.C.'s principal place of business were in Portland, Ore. Personal Use of Car
FINDINGS OF FACT John M. Egan is an anesthesiologist and the head of intensive care at St. Vincent's Hospital in Portland, Ore. Although his principal place of business is the hospital, he maintains a separate office away from the hospital. During the years in issue, he lectured at the University of Oregon Medical School and was very active in numerous professional organizations. *509 On September 28, 1973, John M. Egan, M.D., P.C. (hereinafter the corporation) bought a new Mercedes Benz 450 SL for $ 10,857. During the years in issue, the Mercedes was used by John M. Egan on a daily basis to travel between his home, the hospital, and his office. Additionally, he used the Mercedes to attend professional meetings, to lecture and do research at the medical school, to consult at other doctors' offices, and to attend to miscellaneous business matters. His usual daily routine was to travel from his home to the hospital with all other trips originating from and terminating at the hospital. He had a Porsche and rarely used the Mercedes for personal reasons. During the years in issue, John M. Egan's average weekly use of the Mercedes was as follows: [3]
*510 Round Trip
Total
Use
Trips/Week
Mileage
Mileage/Week
Home to Hospital
6
2
12
Hospital to Office
6
12
72
Hospital to Medical School
4
8
32
Professional Meetings/
Consultations
2
20
Miscellaneous business
5
Miscellaneous personal
5
146
Thus, John M. Egan's yearly use of the Mercedes averaged 7,592 miles. Of that, 884 (12 percent) was personal (commuting and miscellaneous), while 6,708 (88 percent) was for business. [4]
In its fiscal years ending in 1977 and 1978, the corporation paid $ 1,956 and $ 2,599, respectively, for automobile operating expenses. [5] In each of the years 1977 and 1978, John M. Egan paid the corporation $ 300 for his personal use of the Mercedes. *511 In his statutory notices of deficiency, respondent disallowed deductions by the corporation for the portion of each year's operating expenses attributable to personal use by John M. Egan and determined the same portions were dividends to John M. Egan. Additionally, respondent determined John M. Egan received a dividend each year equal to a portion of the Mercedes' fair rental value. OPINION It is basic tax law that a corporation may not pay the personal expenses of its shareholders and deduct the amounts paid as section 162 business expenses. [6] Furthermore, to the extent the corporation does pay such expenses, a dividend to the benefiting shareholders results. Petitioners do not dispute those statements of law. Thus, for all practical purposes, we are presented with a situation wherein the finding of facts decides the case. [7]
We have found 12 *512 percent of John M. Egan's use of the Mercedes was personal in nature. Thus, 12 percent of the corporation's claimed deductions for operating expenses are not deductible, and those disallowed amounts are dividends to John M. Egan. [8] Likewise, 12 percent of the yearly fair rental value is a dividend to John M. Egan in both 1977 and 1978. However, John M. Egan paid the corporation $ 300 each year for the personal use of the car, and the dividends based on fair rental value must be reduced by $ 300 each year. [9]
*513 Salvage Value
FINDINGS OF FACT As previously noted, the corporation acquired a 1973 Mercedes Benz 450 SL for $ 10,857 on September 28, 1973. At that time, the accounting firm which prepared the corporation's tax returns, assigned the Mercedes a $ 1,857 (17.1 percent of cost) salvage value and a five-year useful life. [10] That firm represents over two hundred corporate clients and assigns salvage values based on experience as to what a reasonable figure is at the time of purchase. The figure usually is 10 to 20 percent of cost. John M. Egan's average yearly use of the Mercedes was 7,592 miles. See p. 4, supra. On January 22, 1982, he obtained an estimate of what it would cost to put the Mercedes in perfect condition for sale. The estimated cost was $ 9,535.85, including $ 4,250 for body work. Generally speaking, John M. Egan considered the Mercedes a "lemon." [11] However, John M. Egan was negligent about keeping cars in good shape. *514 In his statutory notice of deficiency, respondent determined the proper salvage value was $ 6,270. Respondent's agent derived that figure by using the September 1973 National Automobile Dealers Association (NADA) guide to determine the fair market value of a Mercedes which was five years old in 1973. He then compared that value to the original cost of the then five-year-old car to get a percentage for salvage value. That percentage was applied to the cost of the corporation's Mercedes, and the resulting figure was adjusted to take into account the statutory salvage value ten percent reduction. See sec. 167(f)(1). OPINION There is no dispute that the corporation must take into account the Mercedes' salvage value in computing depreciation deductions with respect to the Mercedes. See sec. 1.167(a)-1(c), Income Tax Regs. However, the parties disagree as to that salvage value amount. The corporation asserts $ 1,857 as a reasonable amount determined at the time of acquisition. Respondent asserts $ 6,270 as a reasonable amount which could have been determined at the time of acquisition. Salvage value is "the amount (determined at the time of acquisition) which is estimated will *515 be realizable upon the sale or other disposition of an asset" after the asset's useful life. Sec. 1.167(a)-1(c)(1), Income Tax Regs. Salvage value herein is a question of fact upon which the corporation bears the burden of proof. See Rule 142(a). However, in evaluating the proffered evidence, recognition must be given the fact salvage value is a time-of-acquisition estimate of which there can exist no precise proof. The corporation relies on its accounting firm's assignment of a 17.1 percent salvage value, on the time-of-trial poor condition of the Mercedes, and on John M. Egan's negligent practices with respect to the care of cars. [12] Respondent relies on his NADA guide based calculation. Were the corporation's asserted value not so low in light of the limited use to which the Mercedes was put, we would be tempted to accept it without hesitation. Experience provides one of the few means for determining salvage value, and the corporation used an accounting *516 firm with vast experience. However, John M. Egan's practice of negligent upkeep supports a low salvage value determination and is a proper consideration since it relates to the taxpayer's particular situation. See Engineers Limited Pipeline Co. v. Commissioner,44 T.C. 226 (1965). On the other hand, while respondent's calculation uses data available at the time of acquisition, it does not take into account either varying rates of inflation or this taxpayer's particular situation. [13] Nevertheless, respondent's calculation is bolstered somewhat by the low mileage figures--a fact which presumably was foreseeable at the time of acquisition. See n. 12, supra.
Stated succinctly, we are not convinced totally by either party. However, based on the record as a whole, we find the salvage value, determinable at the time of acquisition, is $ 3,800. See Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. John M. Egan filed joint Federal income tax returns with Mary B. Egan for 1977 and 1978, and they both signed a petition filed herein. However, a statutory notice of deficiency was issued to only John M. Egan. Hereinafter, no further reference shall be made to Mary B. Egan. ↩
2. Fiscal year ending is abbreviated as FYE.↩
3. Our figures are based on the record taken as a whole. We found all the witnesses to be credible although their testimony varied in places. John M. Egan kept no exact record as to his use of the Mercedes during the years in issue. Consequently, we have made our findings bearing against him. See Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930). Similarly, the testimony as to the mileage between various points fluctuated somewhat. We are at a loss to understand why the distance between two points could not have been stipulated.
4. What trips are business use versus personal use is not at issue herein. The home to hospital trips (commuting) and the miscellaneous personal trips are counted as personal use.↩
5. Respondent's disallowance of part of the corporation's deductions for automobile operating expenses seems to be based solely on John M. Egan's personal use of the Mercedes. Only on brief, does respondent intimate that he considers the amounts↩ claimed excessive. If he is raising an issue, he is raising it much too late.
6. Unless otherwise provided, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
7. Our findings of fact were made with attention to petitioners' burden of proof. See Rule 142(a).↩
8. Thus, for its FYE September 30, 1977, the corporation may not deduct $ 234.72 (12 percent of $ 1,956) of the claimed automobile operating expense. For the corporation's FYE September 30, 1978, the disallowed amount is $ 311.88 (12 percent of $ 2,599). Therefore, John M. Egan received dividends from the corporation's payment of automobile expenses of $ 234.72 and $ 311.88 in 1977 and 1978, respectively. In his statutory notices of deficiency, respondent treated the $ 300 paid by John M. Egan as additional operating expenses for purposes of applying the personal use percentage and then credited $ 300. Based on the testimony at trial, we have found the $ 300 payments were for personal use. There is no basis for concluding they represented reimbursement for additional paid operating expenses. ↩
9. Petitioners offered no evidence as to the yearly fair market rental value. In his statutory notice of deficiency, respondent arrived at a figure of $ 1,398 based on 42 percent personal use. Such assumes a total yearly fair rental value of $ 3,328.57. Thus, John M. Egan received a rental value dividend of $ 99.43 [(12 percent of $ 3,328.57) - $ 300] each year in 1977 and 1978.↩
10. The useful life is not at issue herein.↩
11. The estimate obtained by John M. Egan lists the Mercedes' mileage as 155,709 on January 22, 1982, which would indicate driving of about 18,000 miles per year rather than the 7,592 miles we have found. However, we found credible John M. Egan's testimony that the listed figure was a mistake and should have been 55,709.↩
12. To the extent, the corporation relies on the fact this Mercedes was a "lemon", it is in error. That fact relates to an unforeseeable event which has no bearing on time-of-acquisition determination of salvage value.↩
13. It is unclear to what extent varying price levels may be considered in the determination of salvage value. See sec. 1.167(a)-1(c)(1), Income Tax Regs.↩